**William K. PARKER, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 20249.**

United States Court of Appeals Ninth Circuit.

Dec. 19, 1968.

Rehearing Denied Jan. 2, 1969.

**1194**

Arthur D. Dempsey, San Francisco, Cal., for appellant.

Sidney Lezak, U. S. Atty., Portland, Or., for appellee.

Before JOHNSEN*, HAMLEY and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge:

Parker and a co-defendant, Myers, were convicted of robbing a federally insured savings and loan association (18 U.S.C. § 2113(a)), and Parker appeals. We affirm.

Parker does not argue that there is not sufficient evidence to support the conviction. Our examination of the record persuades us that the evidence is more than sufficient. We will therefore state only so much of the facts as seems necessary to elucidate our disposition of the various arguments that he makes. We consider each argument separately.

1. *Separate trial.*

The three defendants[1] were tried together. Under Rule 8, F.R.Crim.P., this was prima facie proper. Both before and during the trial, Parker moved for a separate trial. These motions were denied. The trial judge has a considerable discretion in ruling on such motions. Loux v. United States, 9 Cir., 1968, 389 F.2d 911, 920, and cases cited; Duke v. United States, 9 Cir., 1958, 255 F.2d 721, 729. The question then becomes, was that discretion abused, i. e., was the joint trial so prejudicial to Parker as to require the exercise of that discretion in only one way, by ordering a separate trial for him?

In support of his argument that a separate trial should have been granted, counsel refers to a number of things that he deems prejudicial. He says that Parker's co-defendants took the stand while he did not, and that certain evidence given by them tended to incriminate

---

* Honorable Harvey M. Johnsen, Senior United States Circuit Judge, Eighth Circuit, sitting by designation.

1. A third defendant, Orlando, was charged and convicted as an accessory after the fact. On his appeal, we first affirmed, Orlando v. United States, 9 Cir., 1967, 377 F.2d 667, and later, on motion of the government, vacated the conviction, Orlando v. United States, 9 Cir., 1967, 387 F.2d 348.

him. He says that certain statements by his co-defendant Orlando to F.B.I. agents, used against Orlando, tended to incriminate Parker. He further argues that, because Myers and Orlando were co-defendants, he had no right to cross-examine them when they took the stand.

■ Specifically, counsel points to the following: Orlando told F.B.I. agents that Parker had arrived at Orlando's house unexpectedly, had stayed the night, and had left at 4:30 P.M. The robbery occurred at 5:00 or thereabouts. In a consent search of Orlando's house, which began around 7:00 P.M., Parker and Myers were found hiding under a bed. Orlando told the agents that a blue Ford car, parked in front of Orlando's house, was Parker's. In the open trunk of that car was a white jacket, such as one of the robbers wore. Orlando told the agents that the jacket and two hats belonged to Parker, and that he had therefore put them in Parker's car.[2] (On the stand, Orlando gave testimony to the same effect.) He also told the agents that a shaving kit, found in his house, was Parker's. In it was bait money taken in the robbery. The robbers used a pink and brown Ford car. One like it, bearing the same license number and belonging to Orlando, was in his driveway. Orlando said that it was his, and that he left the keys in it.

During the trial there were references to the fact that Orlando had been found not guilty at a prior trial.

■ Myers testified that he lived in Seattle and knew Parker in the State of Washington; that he saw Parker and met Orlando at the funeral of Parker's father in Yakima; that he and Parker planned to go to Portland to get jobs; that Parker went to Portland; that Myers went there a little later and met Parker at Orlando's house. Myers also, presumably to blunt the effect that it might have if first brought out on cross-examination, testified as to his extensive prior criminal record, and that it was a violation of his parole for him to be in Portland. On cross-examination by the prosecutor, he testified that he had met Parker in the penitentiary, knew that Parker was on parole, but did not know whether Parker was violating his parole by being in Portland. At that point, a separate trial was again requested by Parker's counsel and denied. No request was made for any instruction on the subject. At no other time during the trial was Parker's prior incarceration or his having been in the penitentiary mentioned.[3]

2. When these statements were testified to by an F.B.I agent, Parker's counsel asked the court to instruct that the statements were only admissible against Orlando. The court did so. In its instruction, the court used the word "binding"—"binding" on the defendant who made the statement; not "binding" on other defendants. This is incorrect—the testimony was not "binding" on anyone, though it may have been admissible against him. However, no objection to the instruction was made on that or any other ground.

The instruction was not limited to the incident that produced it. It expressly referred to all similar evidence that might be received. Counsel did not request its repetition when such evidence came in.

3. We have considered whether the mention of Parker's prior incarceration should be treated as plain error, requir-

ing a new trial, although counsel did not raise this question. We think that it should not be so treated in this case. As cross-examination of Myers, who had opened up the question of his association with Parker, it was proper. It came up only incidentally, and was never mentioned again by anyone. The case against Parker was strong. By the time that the case was argued, everyone seems to have forgotten the incident. We think that the error, if error it was, was "harmless," not "plain." Carlino v. United States, 9 Cir., 1968, 390 F.2d 624; Davis v. United States, 9 Cir., 1966, 370 F.2d 310; cf. Cellino v. United States, 9 Cir., 1960, 276 F.2d. 941. Compare United States v. Stromberg, 2 Cir., 1959, 268 F.2d 256; United States v. Dillinger, 4 Cir., 1965, 341 F.2d 696; Leonard v. United States, 5 Cir., 1967, 386 F.2d 423; Atkinson v. United States, 8 Cir., 1965, 344 F.2d 97; Brown v. United States, 10 Cir., 1967, 380

■ Joint trials of persons charged together with committing the same offense or with being accessory to its commission are the rule, rather than the exception. There is a substantial public interest in this procedure. It expedites the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burden upon citizens who must sacrifice both time and money to serve upon juries, and avoids the necessity of recalling witnesses who would otherwise be called upon to testify only once.[4] We have recognized the public interest involved. Bayless v. United States, 9 Cir., 1967, 381 F.2d 67, 72.

Here, some of the facts mentioned in the out-of-court statements of Orlando to F.B.I. agents, such as ownership of the two cars, were also proved by direct testimony. Others were merely small bits and pieces of a larger picture and can hardly have had any substantial effect

upon the verdict.[5] Finally, Orlando took the stand and was subject to cross-examination. See Santoro v. United States, 9 Cir., 1968, 402 F.2d 920; Rios-Ramirez v. United States, 9 Cir., 1968, 403 F.2d 1016; cf. Bruton v. United States, 1968, 391 U.S. 123, 136, 88 S.Ct. 1620, 20 L. Ed.2d 476.

■ Parker cannot complain that Myers and Orlando elected to take the stand; the privilege of each not to testify was his alone, and each could waive it if he chose. But Parker urges that he had no right to cross-examine them and thus had no chance to discredit their testimony, insofar as it was detrimental to him. There is no such rule. Counsel cites no authority for it, and we know of none. As is stated in 3 Wharton's Criminal Evidence, § 863, 12th ed., 1955: "The accused is entitled to a searching cross-examination of a co-defendant who has testified for the state." We do not think

F.2d 477, with Tallo v. United States, 1 Cir., 1965, 344 F.2d 467; United States v. Rinaldi, 2 Cir., 1962, 301 F.2d 576; United States v. Tomaiolo, 2 Cir., 1957, 249 F.2d 683; United States v. Jacangelo, 3 Cir., 1960, 281 F.2d 574; United States v. Harmon, 4 Cir., 1965, 349 F. 2d 316; Odom v. United States, 5 Cir., 1967, 377 F.2d 853; United States v. Reed, 7 Cir., 1967, 376 F.2d 226; United States v. White, 7 Cir., 1966, 355 F.2d 909; Sumrall v. United States, 10 Cir., 1966, 360 F.2d 311.

4. The witness is the forgotten man in the administration of justice. His knowledge of the case may be purely fortuitous. Yet he can be compelled to attend, subject to heavy penalties for his failure to do so. The remuneration for loss of his time and for the inconvenience that he suffers is a mere pittance (28 U.S.C. § 1821). He may even find himself locked up for his own protection or because of fear that he may depart—a pleasant experience for which he gets an additional $1.00 per day (ibid.). When he gets to court, he may wait a long time before he is called. In a criminal case he will probably be excluded from the courtroom and have to spend his time in a witness room, which may or may not even have windows, or, worse yet, in the corridor of the courthouse. *He dare not talk to strangers or other witnesses;* yet he is subject to being interviewed and re-interviewed by counsel

for both sides. When called, he finds himself in a strange and often terrifying environment. He is not permitted to do what he has just sworn to do, tell the whole truth, but only that part of it that court and counsel permit. He cannot tell his story in his own way, but only in answer to questions that are sometimes totally unintelligible to him. And then he faces cross-examination by a skilled advocate whose principal objective may be to convince the jury—and incidentally everyone in the courtroom—that he is a congenital liar, whose word no sane person could possibly believe. When he finishes, he may or may not be excused, depending upon whether some counsel thinks that he might want to recall him. Add to this the merciless treatment given by *the news media to all participants,* including witnesses, in a trial of any notoriety, and the attempts at influence or the threats against his personal safety and that of his loved ones to which a witness is sometimes subjected, and it is no wonder that most citizens will do everything possible to avoid being called to testify. In a particular case, once ought to be enough.

5. The jury was instructed to consider the statements only against Orlando. The efficacy of such limiting instructions, however, has been questioned. See Bruton v. United States, 1968, 391 U.S. 123, 128–136, 88 S.Ct. 1620.

that this rule should be, or is, limited to co-defendants called by the state. We also know that it is the practice to permit such cross-examination. Santoro v. United States, supra; Rios-Ramirez v. United States, supra. Moreover, in this case the court offered Parker's counsel the opportunity to cross-examine both Myers and Orlando, but each offer was declined. Their testimony, given in open court and subject to cross-examination by Parker's counsel, was evidence in the case for all purposes. Very little of it can be said to have damaged Parker.

■ Counsel argues that Parker, who did not take the stand, was prejudiced by the argument of counsel for Myers and Orlando, who did. Myers' counsel said: "We have Mr. Myers in a difficult situation of getting on the stand. He hid nothing from you." Orlando's counsel said: "he took the witness stand * * * and he told everything." Parker's counsel argues that these were comments on Parker's failure to take the stand. In context, they were not; they were merely arguments in support of Myers' and Orlando's veracity. If Myers' testimony were believed, it would have exculpated Parker as well. Orlando's defense was alibi. His counsel's argument did not "point the finger" at Parker.

■ Taking all of the facts together, we cannot find abuse of discretion in denying Parker a separate trial. When men get together to rob a bank, and do so, they take chances, one of which is that if they are caught there may no longer be honor among thieves. Parker and Myers did not literally get into the same bed, but they were found under it. As Judge Hastings said in United States v. Kahn, 7 Cir., 1967, 381 F.2d 824, 838: "where proof of the charges against the defendants is dependent upon the same evidence and alleged acts, as is the case when the charged relationship of the defendants is principal-aider-abettor, severance should not be granted except for the most cogent reasons. * * * Not to be forgotten among the considerations affecting the exercise of the trial court's discretion is the possible prejudice to the Government which might result from a separate trial."

2. *Publicity during trial.*

■ Parker, Myers and Orlando were first charged jointly, as principals, in a one-count indictment. Parker pleaded guilty. Orlando was tried alone, and was acquitted. Meanwhile, Parker's plea was withdrawn and that indictment was dismissed as to him. During the trial of the present case, the former guilty plea was publicized in the news media. When this was brought to the trial judge's attention, he individually interviewed each juror, with only the court reporter present, and found that none of the jurors had heard, seen or read anything concerned with the trial. The trial then continued.

The trial judge followed an appropriate procedure, see Marshall v. United States, 1958, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250, and found no prejudice. We agree with him. Welch v. United States, 10 Cir., 1966, 371 F.2d 287.

■ Even though the jury did not see or hear the media, counsel seeks to link the publicity to references in court to Orlando's prior trial. Testimony at the trial did divulge to the jury that Orlando had been tried previously as a principal and had been acquitted. This evidence could not prejudice Parker; rather, it would be either irrelevant or helpful to him. In fact counsel for Orlando made much of Orlando's prior acquittal in his closing argument. In this context he mentioned that "all three were indicted in the same indictment for armed robbery. * * *" This was the only mention within the jury's hearing of the prior indictment of Parker. It does not divulge that Parker had entered a guilty plea and then had withdrawn it. In context the comment does not seem to have been other than helpful to Parker. It could only indicate to the jury that Parker had not been convicted under the prior indictment.

3. *The instruction on the inferences from the possesion of stolen money.*

▆ Parker also complains of the trial court's instruction to the jury regarding the inferences which could be drawn from his unexplained possession of recently stolen property. The instruction allows the jury to infer (1) that Parker knew the money was stolen, and (2) that he participated in the robbery. Such an instruction is proper. See Dunson v. United States, 9 Cir., 1968, 404 F.2d 447; Jenkins v. United States, 10 Cir., 1966, 361 F.2d 615; cf. Neff v. United States, 9 Cir., 1968, 400 F.2d 895; Spradlin v. United States, 9 Cir., 1968, 394 F.2d 816; Jones v. United States, 9 Cir., 1967, 378 F.2d 340. Compare United States v. Gainey, 1965, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 with United States v. Romano, 1965, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210.

4. *The in-court identifications following failure of the witnesses to identify Parker in a lineup.*

▆ In court, the teller at the savings and loan office identified Parker and Myers as the robbers. She had, however, been unable to identify the two men in a lineup held the day after the robbery. The savings and loan manager did not make a positive identification in court, but "believed" that Parker and Myers were the robbers. He also had failed to identify the men in the lineup.[6]

Parker contends that these circumstances were " 'so conducive to irreparable mistaken identification' as to deny to the Appellant herein due process of law." We think not. The witnesses were vigorously cross-examined about their failure to identify at the lineup. This lineup was properly used by counsel in an attempt to discredit their in-court testimony. It could only be useful for that purpose; it certainly did not help the government's case. We cannot know the extent to which the identification testimony was accepted by the jury. But we do know that there was plenty of other, and very strong, circumstantial evidence that Parker was one of the robbers.

Affirmed.

---

6. United States v. Wade, 1967, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, is not here applicable. Stovall v. Denno, 1967, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199.