Ted **LINN** et al., Appellants
(Defendants below),

v.

The **STATE** of Wyoming, Appellee
(Plaintiff below).

No. 4048.

Supreme Court of Wyoming.

Feb. 2, 1973.

John E. Ackerman, Casper, for appellants.

Clarence A. Brimmer, Atty. Gen., Frederick C. Reed, Asst. Atty. Gen., Cheyenne, J. F. Mahoney, Casper, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN and GUTHRIE, JJ.

Justice McINTYRE (Chief Justice at time of oral argument) delivered the opinion of the court.

The three appellants named in the title of this case were jointly charged in Teton County as accessories before the fact to the first degree murder of Larry Olinger. Upon demand of the defendants, a bill of

particulars was furnished by the prosecution. It charged the defendants, in furtherance of a common design, encouraged, hired or otherwise procured the murder of Olinger in the State of Nevada. The common design was alleged to have been entered into at the home of defendant Ted Linn in Jackson, Wyoming, between August 1 and August 8, 1967.

Pursuant to the request of defendants, a change of venue was granted to Natrona County. Trial was had and all three defendants were found guilty by the jury. Sentence was imposed and defendants have appealed. Their court-appointed attorney, John E. Ackerman, alleges 17 trial errors and claims the conviction of each defendant should be reversed.

One of the admitted participants in the making of plans at the home of Linn and one of the actual murderers was Robert Leroy Lindblad. He was given immunity by the state and freely related on the witness stand all details of a plan to murder two persons, Robert Stucker and Larry Olinger. Lindblad was on the stand several days. During that time he described in horrible detail how Stucker and Olinger were gotten to Nevada; how they were there murdered; and how their bodies were buried in a shallow grave. According to him, Ted Linn and Glenn Lucas participated in the actual double murder.

### David Goldsmith

It is clear and undisputed in the evidence that Goldsmith was out of the state and not present when plans were made at Linn's home at the time specified in the bill of particulars. According to Lindblad, it was Linn who suggested he had an idea where they might get some money and approached this idea: If Lindblad could knock a couple of Linn's friends out, he could receive a portion of approximately $20,000. Lindblad testified the $20,000 was to be split three ways—between Lindblad, Linn and Lucas.

There is no evidence that Goldsmith, who was out of the state, took part in the

making of a deal at Linn's home at the time in question. In its brief the state says Linn was the master-mind of the operation. The testimony was that Linn supposedly called Goldsmith by long distance telephone and a recording was made of the conversation. Lindblad testified he afterwards listened to the recording but the name Goldsmith was not mentioned during the conversation.

The trial judge ruled the identification of Goldsmith was insufficient and the jury was instructed to consider the evidence of what happened at Linn's home only as evidence against Linn and Lucas and not as evidence against Goldsmith.

The state admits in its brief that the case against Goldsmith was fairly tenuous, except for the testimony of a witness, Keith Hanson. It is claimed there were casual and occasional references which tended to connect Goldsmith, but these "were hardly enough to justify a prosecutor in proceeding against him as an accessory before the fact." It is then claimed Hanson supplied the vital information.

Hanson was incarcerated in the county jail at Jackson at the same time Linn, Lucas and Goldsmith were. He testified to certain conversations with them. Concerning Goldsmith, he testified Goldsmith had stated he knew he could not collect life insurance (which was the prosecution's motive theory). According to Hanson, Goldsmith said his partners (Stucker and Olinger) had something on him, "so he had to take care of them."

With respect to the charge, as specified in the state's bill of particulars, Goldsmith is tied into it primarily by this question and answer in Hanson's testimony:

"Q. Did he tell you any steps he had taken toward getting rid of them? A. Well, he contacted Ted Linn, and Ted Linn carried out the plan."

Hanson had been talking to Linn and Lucas. In the testimony set out above he failed to specify where his information about Linn being contacted came from. More importantly, the witness failed to

connect the contact referred to by him to the Linn-home arrangement which the prosecution was standing on, according to its bill of particulars.

On the whole, the testimony against Goldsmith was somewhat tenuous and weak, as the attorney general seems to recognize. However, the weight to be given to Hanson's testimony and the inferences to be drawn therefrom were for the jury, providing nothing in the trial happened which might unduly influence the jury in its determination.

Before trial began, counsel for the defendants requested a separate trial for each defendant and insisted rather strenuously that defendants could not receive a fair trial if they were tried together. On appeal it is argued that, on at least 15 separate occasions, the jury had to be instructed to disregard, as to one or two defendants, statements made by another defendant. This became so frequent and common in the trial that the judge would caution the jury merely by saying: "The same admonition." Or, "Please remember the admonition at all times."

During the course of trial, when a witness was relating a conversation with Lucas following the homicides, defense counsel renewed his motion for a severance. It was denied. The court at that time instructed the jury that the testimony being offered would be admissible only as against Lucas.

In Sims v. United States, 132 U.S.App. D.C. 111, 405 F.2d 1381, 1382, it was held, under the rule relating to prejudicial joinder, the trial judge has a continuing duty at all stages of the trial to grant a severance if prejudice appears. Rule 14, Fed. Rules Crim.Proc., was cited. See Rule 13, W.R.Cr.P.

■ We think sufficient reason for granting a severance as to Goldsmith did appear in the trial of this case. As previously indicated, he was not present when plans were made at the home of Linn in Jackson for the murder of Stucker and Olinger. Also, Goldsmith had no part in execution of the plan made in Linn's home during the first week in August, 1967. At least 11 times conversations with either Linn or Lucas were testified to, with the court instructing the jury to disregard as to Goldsmith.

The long and detailed testimony given by Lindblad with respect to the actual killings and carrying out of the plan made in Jackson was bound to have an effect on the jury; and with Goldsmith's name being frequently mentioned, it would be difficult for the jury to disregard testimony as to him in cases where it was supposed to do so.

### Linn and Lucas

On the other hand, Linn and Lucas were present and participated in making the plan for murder, according to Lindblad's testimony. They were also present and took part in carrying out the plan, if Lindblad's testimony was to be believed. These were the damaging and crucial facts in the prosecution's case against Linn and Lucas. Although witnesses often testified to conversations with Linn when Lucas was not present, or to conversations with Lucas when Linn was not present, statements made in these conversations were relatively unimportant insofar as proof of the crime charged is concerned.

Counsel for the defendants relies largely on Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), for his argument that each of the defendants should have had a separate trial. In that case, however, Evans and Bruton were jointly tried for armed postal robbery. Evans did not testify but confessed to a postal inspector. The inspector testified at the trial concerning Evans' confession. Since Evans did not testify, it was held the introduction of his confession denied Bruton the right of confrontation and cross-examination, which could not be cured by instruction to the jury.

It would appear the Evans confession was a major part of the evidence against Bruton, if not the principal evidence in

that case. Such is not the situation in the joint trial we are dealing with, insofar as Linn and Lucas are concerned. Disregarding what was said at Linn's home, where both Linn and Lucas were present, the Linn conversations and Lucas conversations which where testified to did not, for the most part, pertain to the question of whether a plan for murder was made at Linn's home. Such conversations related primarily to subsequent matters. Linn and Lucas are not charged with murdering Olinger. They are charged with being accessories before the fact to his murder. The evidence indicates they were together on that.

As far as details of the actual murder are concerned, there is no substantial contradiction of the fact that Stucker and Olinger were murdered in Nevada and their bodies buried in a shallow grave—pretty much as described by Lindblad. We fail to see where either Linn or Lucas was prejudiced by a joint trial of the three defendants named.

Rule 11(b), W.R.Cr.P., permits the joinder of defendants with this language:

"Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. Such defendants may be charged in one or more counts together, or separately, and all of the defendants need not be charged in each count."

■ We clearly are dealing with a case where three defendants are alleged to have participated in the same act or transaction —a plan for murder made at the home of Linn in Jackson. And, as a general rule, defendants can be indicted or informed against together unless there are compelling reasons for separate trials. Parker v. United States, 9 Cir.1968, 404 F.2d 1193, 1196, cert. den. 394 U.S. 1004, 89 S.Ct. 1602, 22 L.Ed.2d 782; Golliher v. United States, 8 Cir.1966, 362 F.2d 594, 603;

United States v. Fassoulis, D.C.N.Y.1969, 49 F.R.D. 43.

As stated in the *Parker* case we have just cited:

"Joint trials of persons charged together with committing the same offense or with being accessory to its commission are the rule, rather than the exception. There is a substantial public interest in this procedure. It expedites the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burden upon citizens who must sacrifice both time and money to serve upon juries, and avoids the necessity of recalling witnesses who would otherwise be called upon to testify only once."

■ We have indicated, it is our opinion that compelling reasons were indeed present for a separate trial of Goldsmith. We fail to find sufficient reason, however, for a separate trial of either Linn or Lucas.

*Motions To Dismiss*

Appellants claim the trial court committed error in refusing to grant several motions to dismiss which were made by them. *First*, dismissal was sought on the ground that § 6–14, W.S.1957, does not apply to felonies committed outside the State of Wyoming. *Second*, dismissal was sought on the ground that the acquittal of Glenn Lucas in Nevada operated as a bar to the Wyoming prosecution. And *Third*, dismissal was sought on the ground that the prosecution constituted double jeopardy.

These matters have been dealt with and decided contrary to the contentions of appellants, in prior special proceedings, both by this court and by the United States Tenth Circuit Court of Appeals. Although we have carefully reconsidered the contentions made, we find no merit in them; and we see no need to repeat at length what has already been decided in connection with these contentions.

The prior proceedings we refer to are reported as Goldsmith v. Cheney, Wyo., 468 P.2d 813; and Goldsmith v. Cheney, 10 Cir.1971, 447 F.2d 624. Although Linn and Lucas were not parties in these prior proceedings, they now are making the same arguments which were made in such proceedings. The same answers and the same reasoning apply with respect to them. They fail to show any convincing reason for a different result.

### Miscellaneous Assignments

Appellants have suggested a number of additional possible errors, none of which seem to have sufficient merit to justify extended discussions. In order to indicate that we have considered them, however, we will mention each briefly.

■ 1. During the trial, a witness, Gary Matheis, testified Lucas, in a telephone conversation, threatened to kill him if he testified. Later, on cross-examination, the witness admitted he could not clearly identify Lucas as the caller. Whereupon, the testimony concerning a threat was stricken and the jury was instructed to disregard it. Later, when a prosecutor was making his summation to the jury, he asked: "Why was Gary Matheis threatened; who had good cause to want him eliminated?" At that point defense counsel objected and reminded that the testimony had been stricken. The prosecutor immediately responded: "This is true; I forgot that took place; forget what I just said."

Clearly, the prosecutor had made a mistake or slip of the tongue. He himself requested the jury to disregard it. We do not find anything in the record to indicate a deliberate attempt on the part of the prosecutor to poison the minds of the jurors, as counsel for appellants suggests. The mistake appears to have been quickly and adequately remedied; and appellants have failed to show they were prejudiced.

2. Counsel for appellants suggests the trial court erred because it did not grant motions by Lucas and Linn for dismissal and acquittal on the ground that one alleged to be a principal cannot also be an accessory before the fact.

■ We made it clear in Goldsmith v. Cheney, Wyo., 468 P.2d 813, 816, that an accessory before the fact may be tried where the accessorial acts took place "and only there." Also, the Tenth Circuit Court, in Goldsmith v. Cheney, 10 Cir.1971, 447 F.2d 624, 627, pointed out that the Wyoming accessory statute creates a separate and distinct offense from that of the principal and the crime is punishable only in the jurisdiction where the accessorial act occurred.

■■ Even though the evidence shows that Lucas and Linn actually assisted Lindblad in the murder of Olinger in Nevada, that would not preclude them from being prosecuted in Wyoming for the crime committed by them in Wyoming—that is the making of a deal whereby they encouraged, hired or otherwise procured the murder of Olinger in Nevada. As stated in United States v. Provenzano, 3 Cir.1964, 334 F.2d 678, 691, cert. den. 379 U.S. 947, 85 S.Ct. 440, 13 L.Ed.2d 544, it is not prerequisite to the conviction of the aider and abettor that the principal be tried and convicted.

■ 3. Appellants charge on appeal that they were denied effective assistance of counsel because the trial court denied without argument three motions which were made by counsel for the defendants "just prior to trial." It is of course elementary that the presentation of legal argument rests with the discretion of the court, for such is submitted as an aid to the court upon indistinct points of law. United States v. Fujimoto, D.C.Hawaii, 1952, 102 F.Supp. 890, 893. Moreover, we fail to find anything in the record to indicate that argument on the motions in question was requested.

4. Appellants attempt to argue that § 6–14, W.S.1957, does not provide a penalty which could be applicable in this particular case. It is recognized that the statute provides a person, upon conviction, shall suffer the same punishment and penalties as

are prescribed by law for the punishment of the principal. Appellants argue that Lucas, a principal, was acquitted in Nevada; and that the case against Linn, a principal, was dismissed in Nevada. The argument overlooks that Lindblad was also a principal.

Unique as the argument is, we cannot accept it. Section 6–14 clearly provides that the person convicted shall suffer the same punishment and penalties as "are prescribed by law" for the punishment of the principal. The law referred to can only mean Wyoming law. Thus, the meaning of the statute is that one convicted as an accessory before the fact shall suffer the penalty prescribed by Wyoming law for a person convicted of the crime involved. In this case Linn and Lucas were convicted as accessories before the fact to first degree murder. Their penalty is the penalty prescribed by Wyoming law for one who commits first degree murder.

5. Complaint is made because the trial court refused to allow the prior recorded testimony of a witness who was not present and who was said to be unobtainable. The testimony was so clearly inadmissible that we will not entertain the assignment pertaining to it.

6. In dealing with miscellaneous assignment numbered 1, we referred to testimony of Gary Matheis who testified that Lucas had threatened him in a telephone conversation. A general objection to the testimony was made when it was first offered and the objection was overruled. Even though the testimony was afterwards stricken and the jury instructed to disregard it, when the witness admitted on cross-examination that he could not clearly identify the caller, appellants still claim prejudice.

Without deciding whether the testimony would have been admissible if the caller had been clearly identified as Lucas, and without deciding whether the objection thereto was sufficiently specific to exclude such testimony, we will simply say we think no prejudice resulted. As we view the record, it appears unlikely that the jury attached controlling significance to the small bit of evidence concerning the telephone call.[1]

7. Error is claimed because of the allowance into evidence of photographs which are said to have been inflammatory. We have heretofore taken the position that such things are generally left to the discretion of the trial court.[2] We fail to find the photographs here involved unusually inflammatory. That is especially true since the charge is accessory before the fact and not murder. Also, photographs could hardly add to the bizarre details which Lindblad testified to on the stand.

8. In several separate assignments appellants claim error because the trial court denied motions made by the defendants for acquittal. They seem to suggest a change in plans resulted in insufficient proof of the crime charged. All assignments of error pertaining to the denying of a motion for acquittal add up to the same thing—a claim of insufficient evidence. The evidence, however, was overwhelming and we need not review it. The jury was the judge of the weight and sufficiency of the evidence to prove the particular crime charged. Except as we specifically indicate otherwise, findings of the jury will not be disturbed.

9. The court gave an instruction to the jury setting forth the material facts to be proved upon the charge of accessory

1. See People v. Weiss, 50 Cal.2d 535, 327 P.2d 527, 538.

2. Dickey v. State, Wyo., 444 P.2d 373, 377–378; State v. Lindsay, 77 Wyo. 410, 317 P.2d 506, 509–510; State v. Alexander, 78 Wyo. 324, 324 P.2d 831, 837, cert. den. 363 U.S. 850, 80 S.Ct. 1630, 4 L.Ed.2d 1733; Alcala v. State, Wyo., 487 P.2d 448, 456, cert. den. 405 U.S. 997, 92 S.Ct. 1259, 31 L.Ed.2d 466, reh. den. 406 U.S. 911, 92 S.Ct. 1613, 31 L.Ed. 2d 823.

before the fact. The following was included:

"2. That the defendants at some time during the first week in August, 1967, in Teton County, Wyoming knowingly and intentionally counselled, encouraged, hired or otherwise procured said murder to be committed."

The defendants offered a substitute instruction which would have made necessary a finding that defendants "planned" the murder of Olinger at Ted Linn's residence in Jackson, Wyoming, on the first week of August, 1967. Apparently the objective of defendants was to limit the jury, according to the state's bill of particulars, to the plan allegedly made at the Linn home rather than any place in Teton County.

There would be several objections to the substitute instruction offered by the defendants. For example, the word "planned" is not equivalent to "counselled, encouraged, hired or otherwise procured said murder to be committed."

Be that as it may, however, the distinction made on behalf of the defendants may have had merit as far as the case against Goldsmith is concerned. We have heretofore indicated an inference might be drawn from the testimony of Keith Hanson that Goldsmith spoke of contacting Linn, but nothing was said about when, where or how.

Inasmuch as we have decided the case against Goldsmith needs to be reversed, we need not pursue the matter of this instruction, as to him. As far as Linn and Lucas are concerned, the only evidence of counselling, encouraging, hiring or otherwise procuring the murder of Olinger had to do with acts which took place at Linn's home. Therefore, as far as Linn and Lucas are concerned, it makes no difference if the court merely said in Teton County. They were not prejudiced.

10. At trial, the defendants objected to the court's instruction on presumption of innocence because of the language which states the presumption is not intended to aid anyone who is in fact guilty beyond a reasonable doubt to escape, but is a humane provision of the law. We have dealt with this instruction several times and have never held it to be erroneous. In fact, we have held the instruction not to be an improper one.[3]

It is true that we said, in Lofton v. State, Wyo., 489 P.2d 1169, 1174, in order to avoid future contentions, the instruction might well be avoided. Also, in Bentley v. State, Wyo., 502 P.2d 203, 207, a majority of the court said the questionable portion of the instruction should not be given in the future.

However, trial of the instant case took place April 19 to May 9, 1971; the Lofton opinion was rendered subsequently, October 28, 1971; and the Bentley opinion was rendered after that, October 24, 1972. Thus, such caveats as were expressed in Lofton and Bentley have no application in the present case.

*Summary*

The conviction of David Goldsmith is reversed and remanded for new trial in the event the prosecution elects to retry such defendant. The convictions and sentences of Ted Linn and Glenn Lucas are affirmed.

3. Carrillo v. State, Wyo., 474 P.2d 123, 124–125; Alcala v. State, Wyo., 487 P.2d 448, 460, cert. den. 405 U.S. 997, 92 S.Ct. 1259, 31 L.Ed.2d 446, reh. den. 406 U.S. 911, 92 S.Ct. 1613, 31 L.Ed.2d 823; Lonquest v. State, Wyo., 495 P.2d 575, 583. See also Kennedy v. State, Wyo., 470 P.2d 372, 373, 375–376.