**Richard Brian REEDER, Appellant (Defendant below),**

v.

**STATE of Wyoming, Appellee (Plaintiff below).**

**No. 4210.**

Supreme Court of Wyoming.

Nov. 14, 1973.

 

Thomas E. Lubnau, Gillette, for appellant (defendant below).

Clarence A. Brimmer, Atty. Gen., George S. Andrews, Sp. Asst. Atty., Gen., Cheyenne, Daniel P. Morgan, County Atty., Wade Brorby, Deputy County and Pros. Atty., Gillette, and Michael L. Wass, Senior Law Student Laramie, for appellee (plaintiff below).

Before PARKER, C. J., and McEWAN, GUTHRIE, McINTYRE and McCLINTOCK, JJ.

Mr. Justice McEWAN delivered the opinion of the court.

The defendant was charged with the crime of first degree murder and the jury returned a verdict in which it found him

guilty of murder in the second degree, whereupon he was sentenced to a term of 22 to 28 years in the State Penitentiary. The defendant appealed from the judgment and argued that the evidence was insufficient to sustain the verdict and that the court erred in failing to give a requested instruction and in allowing a photograph into evidence.

The defendant, the decedent, John Batinovich, and Mel Gunderson, spent some time together in a bar in Gillette, Wyoming, and about 9 p. m. they went to the home of defendant's mother. The decedent was apparently trying to find someone to physically assault a certain "preacher." The defendant went into his bedroom and brought a gun to the living room. Gunderson, who left for work at 9:30 p. m., was in the kitchen packing his lunch. The defendant and decedent began to argue and the defendant fired a shot over the head of the decedent, which he testified was in jest. After Gunderson left for work the defendant and decedent remained in the living room where the argument continued, and according to the defendant, "Well, I realized that he was no longer funning and that he was going to hit me with that beer bottle, so I just shot him." The defendant further testified that after the first shot the decedent fell back against the couch, stood up and kept coming toward him, and he shot the decedent three more times. According to the defendant he ran out the side door, which faced the alley and the decedent ran out the front door, around the corner of the house and up the alley toward him, and "I just figured that the only way I guess I'm going to get to stop him is defend myself more, by hitting him over the head with my pistol, and I raised my pistol and started to walk towards him, but slipped on some shale and he ran right on by me." The defendant then drove away in his father's car, contacted his mother, and some attempt was made to provide him with an alibi. He and his mother disposed of the gun and a bloody shirt which were later re-covered through his help and that of his attorney. The defendant claimed he shot the decedent in self-defense.

The decedent collapsed after running approximately two blocks from the house. The police were notified and an ambulance took him to the hospital where he died 36 hours later as a result of the multiple gunshot wounds.

The testimony of the defendant was in certain respects in conflict with that of three boys 16, 14, and 11 years of age, who heard the shots and witnessed certain events. The boys, who were some distance away, heard what they thought was a firecracker, which was apparently the first shot fired over the head of decedent by the defendant. They proceeded to the area from which they thought the noise came, and, while there, heard two shots and saw two men run out the front door, the first man appearing to be chased by the second. They then heard what sounded like two more shots in the alley, after which the second man, who had chased the first, returned up the alley, got in a car and drove away. The description of the car given by the boys fit the car driven by the defendant. The boys then walked down the street and observed the decedent being taken away in an ambulance and advised the police of what they had seen.

The defendant was 20 years of age and had been staying with his mother in whose home the shooting occurred. He was home on leave from the Marine Corps where he had served two years and had reenlisted for four more years. His classification was that of Machine Gunner, and he was familiar with firearms and had some training in various self-defense techniques. He shot the decedent with a single action revolver which he had recently purchased and which was loaded with five .38 special shells.

According to the defendant, "The State failed to prove a punishable crime, and the evidence in any event was insufficient to sustain a verdict of second degree murder"

because the record clearly showed that he was defending himself, and the State failed to prove malice. He maintained he shot the decedent in self-defense because the decedent was threatening him with a beer bottle. Even if the jury agreed with defendant's version, i. e., that he shot the decedent four times while they were in the house, it would still have to consider the self-defense question. Here, where there was evidence of such a character that different inferences might reasonably be drawn, a question of fact was presented for the jury to determine. State v. Helton, 73 Wyo. 92, 276 P.2d 434, 441. It was the jury's duty to resolve the conflicting evidence, and, as here where there was substantial evidence to support its finding, the verdict must be sustained. Harris v. State, Wyo., 487 P.2d 800, 801.

Our statute, § 6-55, W.S.1957, provides:

"Whoever purposely and maliciously, but without premeditation, kills any human being, is guilty of murder in the second degree, and shall be imprisoned in the penitentiary·for any term not less than twenty years, or during life."

It is therefore necessary in order that the defendant be found guilty that the State prove beyond a reasonable doubt the defendant acted maliciously. State v. Bruner, 78 Wyo. 111, 319 P.2d 863; Nunez v. State, Wyo., 383 P.2d 726. We have previously held that use of a deadly weapon in a deadly and dangerous manner raises a presumption of malice. Ballinger v. State, Wyo., 437 P.2d 305, 309. There were, in addition to the use of a deadly weapon, facts and circumstances shown to raise an inference of malice.

█ In his argument that there was not sufficient evidence to sustain the conviction, the defendant cited evidence most favorable to his position. He ignored our often cited rule that evidence must be viewed by an appellate court in the light most favorable to the State upon an appeal from conviction. Bentley v. State, Wyo.,

502 P.2d 203 at 208. While we believe the verdict supportable even under the defendant's view of the evidence, the correctness of the verdict becomes evident when considered in the light of all the evidence. The jury could well have believed the testimony of the three boys and not that of the defendant. If the jury believed their testimony, that is, that the defendant shot the decedent two times while they were in the house and then chased him down the alley and shot him two more times, the claim of self-defense would disappear. Also, the inference of malice would be so great as to logically defy any finding except malice by the jury.

█ The defendant argued that the district court erred in failing to give his offered instruction concerning the defense of habitation, and referred to 41 C.J.S. Homicide § 386, p. 191 as authority that such an instruction should have been given. An examination of the citation shows that such an admonition is proper where the evidence warrants it, but should be refused when it is not supported by the issues and evidence. As we understand the issue as raised by him in the trial of this case, he was defending himself and not his house from invasion. The court instructed the jury on self-defense and the defendant made no objection that the instruction was insufficient but insists that the additional instruction should have been given. The C.J.S. citation referred to the Wyoming case of State v. Berger, 72 Wyo. 422, 265 P.2d 1061, wherein we said that where the defendant was invited upon the property and there was no trespass an instruction concerning the protection of property was not proper. The facts in this case warranted at most only a self-defense instruction. There was no basis for a defense-of-home instruction. The defendant's instruction claim would fail for the other basic reason that his objection to the court's refusal to give the instruction did not distinctly state the grounds of his objection as required by W.R.C.P. 51. The

objection was that "* * * the failure of the Court to give said instruction to the jury is not in conformity with the laws of the State of Wyoming." The objection must be specific so that the trial court is offered an opportunity on second thought to correct any failure to instruct. Bentley, supra, 502 P.2d at 206. To hold otherwise would negate that portion of the rule calling for specificity of objection which is based upon common sense necessity.

■ Over the defendant's objection the trial court admitted into evidence a colored photograph of the decedent which he argued was error. The photo was apparently taken after extensive surgery had been performed upon the decedent and after his death, but before the autopsy, showing two long incisions and stitches as the result of extensive abdominal surgery. The operation necessitated from the gunshot wounds lasted 14 hours during which time the right colon, duodenum, pancreas, right kidney and a portion of the liver were removed and the gastrointestinal tract was reconstructed. The photo showed what probably were several of the seven bullet holes,[1] together with tubes in the nose and abdomen. The reason we say the photo apparently was taken after death and before the autopsy and showed certain things is that there was no testimony explaining the time of the photo or what it was supposed to represent. The defendant objected to the admission of the photo on the grounds that it was inflammatory, did not show the true condition of the body of the decedent, and there was extraneous material about the head and abdomen which would tend to inflame the jury.

The only reference to the photo by the doctor who performed the surgery and the doctor who performed the autopsy was when they were shown the exhibit and identified it as the "body of John Batinovich." As to this exhibit, their testimony was limited solely to the quoted statement, and the photo was not used in any way in their testimony. A chart which depicted the front and side view of a human form was used by the pathologist to show the various wounds. The photo of the body had no probative value and served no useful purpose during the trial. There was no question that John Batinovich was dead and that he died of multiple gunshot wounds, and the picture contributed nothing to the State's case.

Generally the question of admission of photographs is left to the reasonable discretion of the trial court. Linn v. State, Wyo., 505 P.2d 1270 at 1276, and cases cited; Dickey v. State, Wyo., 444 P.2d 373 at 377. However, in any case of which we are aware in which a photograph was deemed properly admitted it had some probative value. This principle would seem to be applicable to the admission of any exhibit, for if that which is offered has no probative value there would appear to be no reason for its admission. The term "probative" as it applies to evidence means that it furnishes, establishes or contributes towards proof. Akin v. Estate of Hill, 201 Kan. 306, 440 P.2d 585 at 590. When that test is applied to the facts surrounding this exhibit it is clear it had no probative value. In the absence of any explanation of what the photo showed, the jury would have to speculate as to what it depicted. Photographs are properly received into evidence to enable the jury as the trier of facts to better understand that which the photo represents. Alcala v. State, Wyo., 487 P.2d 448 at 456, reh. den. 487 P.2d 467, cert. den. 405 U.S. 997, 92 S.Ct. 1259, 31 L.Ed.2d 466, reh. den. 406 U.S. 911, 92 S.Ct. 1613, 31 L.Ed.2d 823, and Dickey, supra, 444 P.2d at 378. Here the only identification of the exhibit is that it was a photo of the body of John Batinovich. The jury would have to speculate whether it was taken when he was alive or dead. It might reasonably be argued that the reference by the physicians to the exhibit as being the "body of John Batinovich" implied that he

---

[1]. Although the decedent appeared to have been shot only four times some of the bullets made more than one wound.

**973**

was dead. Even if the jury could have concluded that the photo was taken after he was dead it would then have to speculate whether it was taken before or after the autopsy. When a photo is confusing or misleading to the jury it should not be admitted. Potts v. Brown, Wyo., 452 P.2d 975 at 978. Photographs are admissible if they correctly portray the subject matter, do not convey false impressions, and if their probative value is such as to outweigh the possibility of undue prejudice from such circumstances as their gruesome character. 3 Jones on Evidence, § 17.52, p. 356 (6 Ed.). If the probable inflammatory effect of a photo outweighs its evidentiary or probative value, or if it has no probative value it should not be admitted. State v. Makal, 104 Ariz. 476, 455 P.2d 450, cert. den. 404 U.S. 838, 92 S.Ct. 128, 30 L.Ed.2d 71, Archina v. People, 135 Colo. 8, 307 P. 2d 1083, and 29 Am.Jur.2d, Evidence, § 798, p. 879. Under the circumstances the trial court should not have admitted the photograph.

■ However, a guilty verdict will be set aside on account of error only when it is shown to be prejudicial to the rights of the defendant or when it may be fairly presumed from the nature of the error that the defendant's rights were prejudiced. Drummer v. State, Wyo., 366 P.2d 20 at 26. The defendant did not point out why he thought the photo was prejudicial. He contended only that it was error to have admitted the photo, but made no allegation that it was prejudicial. The photograph was not referred to in argument although presumably it went to the jury room along with the other exhibits. It therefore would appear that no emphasis was placed upon that photographic exhibit, and we fail to see how it could have done any harm to the defendant. The State did not use the exhibit in any way to make its case. For error to be regarded as harmful there must be a reasonable possibility that in the absence of the error the verdict might have been more favorable to the defendant. State v. Johnson, 25 Utah 2d 160, 478 P.2d

491. See cases and discussion at 24A C. J.S. Criminal Law § 1887, p. 877.

■ We have carefully examined the photo and the record in the case and find that there is no question but that decedent met his death as the result of gunshot wounds inflicted by the defendant. His plea of self-defense was adequately and properly presented to the jury for its determination and we fail to see how the jury could have been inflamed or misled into an improper verdict by the introduction of this photo. Without approving its use in evidence, we reiterate the rule that errors which in a more doubtful case would be grounds for reversal and new trial will be disregarded as nonprejudicial where, as here, it was clear from the evidence that the defendant was guilty. Espy v. State, 54 Wyo. 291, 92 P.2d 549, at 554. Cited at 24A C. J.S. Criminal Law § 1887, p. 881, and 5 Am.Jur.2d, Appeal and Error, § 786, p. 228.

No reversible error appearing, the judgment is affirmed.

Affirmed.

McINTYRE, Justice (concurring).

I concur in the result reached by the majority opinion, which is that the judgment of conviction must be affirmed. I cannot however subscribe to any implication which may be contained in the opinion to the effect that the trial court erred in admitting the photograph of decedent's body in evidence. Also, I cannot agree that the photograph lacked probative value.

The objection made to the admission of the photograph at the time of trial was that it was inflammatory, did not show the true condition of the body of the decedent, and there was extraneous material on or about the head and abdomen which would tend to inflame the jury. At that time the court had no way of knowing what use attorneys would or would not make of the exhibit. Even if the prosecution did not make the kind of use of the exhibit which members of our court seem to think should

have been made, that would not relate back and make erroneous the admission of the picture in the first instance.

We have heretofore taken the position that it is largely within the discretion of the trial court to determine whether a picture is so inflammatory as to make its admission unadvisable.[1] I fail to see where the picture in this case was so inflammatory as to prejudice a jury.

---

1. Linn v. State, Wyo., 505 P.2d 1270, 1276; Dickey v. State, Wyo., 444 P.2d 373, 377–378; State v. Lindsay, 77 Wyo. 410, 317 P.2d 506, 509–510; State v. Alexander, 78 Wyo. 324, 324 P.2d 831, 837, cert. den. 363 U.S. 850, 80 S.Ct. 1630, 4 L.Ed.2d 1733; Alcala v. State, Wyo., 487 P.2d 448, 456, cert. den. 405 U.S. 997, 92 S.Ct. 1259, 31 L.Ed.2d 466, reh. den. 406 U.S. 911, 92 S.Ct. 1613, 31 L.Ed.2d 823.