**Terry Curtis BENSON, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 5538.

Supreme Court of Wyoming.

Feb. 5, 1982.

Michael H. Schilling, Appellate Counsel, Wyoming Public Defender Program, Laramie, and Sylvia Lee Hackl, Asst. Public Defender, Wyoming Public Defender Program (argued), Cheyenne, for appellant (defendant).

Steven F. Freudenthal, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Criminal Division, and Allen C. Johnson, Senior Asst. Atty. Gen. (argued), for appellee (plaintiff).

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

RAPER, Justice.

Appellant appeals from the judgment and sentence following trial by jury at which he was found guilty of being a felon in possession of a firearm, in violation of § 6–11–115, W.S.1977, Cum.Supp.1981.[1] His appeal raises two issues for us to ponder and decide. First, we must consider whether it was error for the trial judge to allow into evidence testimony relating to the nature of appellant's prior felony conviction. Second, we must decide whether the trial court committed reversible error by failing to instruct the jury that an element of the offense was that the firearm be operable.

We will affirm.

On December 8, 1980, a police officer sat in his patrol car monitoring traffic at Fifth and Pebrican near Hebard School in Cheyenne. At approximately 10:15 a. m. he saw a vehicle pass by, driven by appellant. Aware of a warrant for appellant's arrest on an outstanding municipal court complaint, the police officer started his car and followed appellant. After receiving radio confirmation of the existence of the warrant, the police officer pulled appellant over and arrested him.[2] Appellant was asked if he possessed any weapons, to which he indicated that he did not. The officer was aware at that time of appellant's previous conviction for taking a shot with a shotgun at another police officer and also that the complaint in municipal court recited that appellant had a gun. Appellant requested permission to drive his car to his mother's nearby house before being taken in. However, the police officer explained that this was not possible; the car would either have to be left where it was, or the police would take custody and tow it. Appellant suddenly hurried for the car, ostensibly to lock it. The police officer, unsure of what appellant was trying to do, began struggling with appellant in order to keep him from reentering the car.[3] The officer finally succeed-

---

1. Section 6–11–115, W.S.1977, Cum.Supp.1981:
"(a) Any person who has previously pleaded guilty or been convicted of murder, voluntary manslaughter, assault to commit murder, aggravated assault, robbery, burglary or sexual assault in the first or second degree, or mayhem, unless pardoned, and who uses or has in his possession any firearm is guilty of a felony.
"(b) Upon conviction, the offender shall be punished by imprisonment in the penitentiary for not more than five (5) years."

2. The trial judge gave an appropriate limiting instruction with respect to the outstanding warrant, and it is not an issue before us.

3. The testimony in part relating to the arrest:
"A. It was at that time, the second time that I was advising the Defendant about the warrant, that I remembered in the complaint that there was a mention that the Defendant did have a gun. I asked him if he had a gun and Defendant replied he did not. I advised him that incident to arrest that I would have to search him, or pat him down, anyways, and again asked him if he had a gun, and he replied to the negative.
\* \* \* \* \* \*
"Q. Okay. What occurred then?
"A. Well, the Defendant just stood there for a moment and looked at me, and then all of a sudden he hurriedly turned and went to the open door of his car.
"Q. Would you describe the manner in which he did this? You said 'hurriedly'. Describe for the Jury, please, just what you saw and what his actions were that you observed.
"A. He didn't say anything. He just turned and just hurriedly—he didn't quite run, but he wasn't walking—went to his car to the open door, to the front-seat area of his vehicle.
"Q. What did you do then?
"A. I immediately followed him.
"Q. And what, if anything, did you observe the Defendant to do?
"A. He was bent over inside the open door and kind of over the driver's seat. I was trying to prevent any further movement by him and was trying to pull him out of the car. He was still attempting to reach in and at one point reached back and locked the back door of the vehicle.
\* \* \* \* \* \*
"Q. (By Mr. Smith) What else did you observe?
"A. I observed his hands moving around the seat area and floorboard area directly beneath the driver's seat.
"Q. What did you do?
"A. Well, like I stated, I attempted to pull him out of the car, back and forth in a tug-of-war type manner, and tried to observe his hands to see what he was reaching for.
"Q. And what did you accomplish? What occurred then as you were doing that?
"A. Finally, after some time, I was able to pull him back out of the front-seat area in the front of the car."

ed in his endeavor and, with the help of police backup which had arrived, handcuffed appellant. He then patted down appellant and searched his car. Under the floor mat on the driver's side he found a .22 caliber revolver.

The Laramie County Clerk of Court identified and there was received in evidence a copy of the judgment and sentence entered on the previous conviction for aggravated assault. There was no evidence that appellant had been pardoned. At trial another police officer was called who testified concerning appellant's 1973 felony conviction for assault with a dangerous weapon. The police officer testified the conviction followed an incident in which appellant had fired a shotgun at him, to establish appellant's conviction of aggravated assault by identifying appellant as the person so convicted. Appellant tried to avoid the officer's testimony in that regard by stipulating to the felony conviction. However, the trial judge ruled the testimony admissible anyway and gave a limiting instruction as to that previous conviction.

The firearm taken from the vehicle appellant was driving and the rounds of ammunition it contained were received in evidence. No evidence was introduced at trial by either the State or appellant to establish whether the handgun was operable. However, appellant objected to the instructions given in this case on the basis that they failed to impose upon the State the burden of proving that the firearm was operable.

## I

▆ The first question we shall address concerns the propriety of admitting testimony relating the nature of appellant's prior felony conviction where appellant was willing to stipulate that he was in fact a convicted felon. The stipulation was not offered until the police officer was on the stand and had been asked to state for what act appellant was convicted.[4] The district court allowed the stipulation that the appellant had been convicted of one of the felonies listed in § 6–11–115, supra fn. 1, which thus barred him from lawfully possessing a firearm. However, the district court ruled that the police officer should be allowed to answer the question because the fact that appellant had been convicted of aggravated assault with a firearm, together with the fact that the arresting officer in this case knew that the complaint upon which the warrant was based alleged appellant had a gun, operated to show why the arresting officer acted as he did when he stopped appellant. One of appellant's positions at the trial was that the arresting officer had made an unreasonable search and seizure. An officer, with such information in his possession, would be ill-advised not to take appropriate protective measures. There was a necessity under all the circumstances present to protect the officer from assault with a concealed weapon. *Parkhurst v. State*, Wyo., 628 P.2d 1369 (1981); *Neilson v. State*, Wyo., 599 P.2d 1326 (1979); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Preston v. United States*, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964).

As we have often said, a trial court's resolution of questions concerning the admissibility of evidence is accorded considerable deference. So long as there is a legitimate and rational basis for it, we will not reverse on appeal. *Apodaca v. State*, Wyo., 627 P.2d 1023 (1981).

Here, the district court's ruling that the evidence would be relevant in evaluating the arresting officer's testimony with respect to the reasonableness of the search and seizure is rational. Accordingly we cannot reverse on this basis.

## II

▆ The second question we must address concerns whether the trial court erred by failing to instruct the jury that a necessary element of the offense was that the

---

4. The procedure and elements for proof of a previous conviction set out in *Chavez v. State*, Wyo., 604 P.2d 1341 (1980) were recognized and followed by the trial court here.

firearm be operable.[5] The statute merely talks in terms of possession of any firearm. No mention is made of an operability requirement. This court has held that a firearm need not be operable to constitute a "dangerous or deadly weapon" under § 6–70B, W.S.1957 (now § 6–4–506, W.S.1977). *Evanson v. State*, Wyo., 546 P.2d 412 (1976). There a pistol jammed and would not operate. See also, *Shafsky v. State*, Wyo., 526 P.2d 60 (1974) where the cartridge clip was not inserted and the pistol was therefore inoperative; the conviction was affirmed.

States with similar statutes have held that, absent appellant's introduction of some evidence that the firearm was inoperable, it is not error to fail to instruct the jury that operability is an essential element.

"As to appellant's second contention that the trial court erred in failing to instruct the jury that the operability of the handgun was an essential element of the crime, we find no error. Appellant offered no evidence indicating that the handgun was inoperable. Both officers, Shelton and Scholl, testified the gun appeared operable and that it contained live ammunition. Further, the gun as well as the clip and ammunition were admitted into evidence. It was within the judgment of the jury to conclude that the gun was a firearm within the definition of

NRS 202.360. See *State v. Cartwright*, 246 Or. 120, 418 P.2d 822, 830–831 (Or. 1966), cert. denied, 386 U.S. 937, 87 S.Ct. 961, 17 L.Ed.2d 810 (1967)." *Rusling v. State*, Nev., 617 P.2d 1302, 1304 (1980).

For the purposes of the case before us, we see no reason to deviate from the approach followed by Nevada. Here, no evidence was introduced showing the firearm to have been inoperable. Further, there was evidence that the revolver was loaded with cartridges at the time of appellant's arrest. Thus, we conclude that it was not error for the district court to reject an instruction requiring the jury to specifically find the firearm operable.[6]

Affirmed.

ROSE, Chief Justice, specially concurring.

I am of the opinion that the trial judge erred when he permitted the State's witness, Officer Terwilleger, to testify concerning appellant's prior conviction for aggravated assault. I will therefore concur in the result only.

The State, in its case-in-chief, called Officer Terwilleger of the Cheyenne Police Department to the witness stand to testify about appellant's prior conviction, a necessary element of the charged offense.[1] This

---

5. The appellant offered the following refused instruction purportedly taken from 18 U.S.C. § 921(a)(3):

  "The term 'firearm' means and includes any weapon which will expel a projectile by the action of an explosive."

  It misrepresents that section which actually reads:

  "(3) The term 'firearm' means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."

6. The trial judge instructed:

  "The term 'firearm' denotes any weapon designed to expel a projectile by action of an explosion, and includes any handgun, rifle or shotgun."

  The firearm in evidence had these characteristics.

  Section 6–11–111, W.S.1977:

  "(a) *Rifle.*—A weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed metallic cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger.

  "(b) *Shotgun.*—A weapon designed and redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of ball shot or a single projectile for each single pull of the trigger."

  The trial judge apparently adopted the sense of this statute to include a handgun.

1. As noted by the majority, appellant was convicted of a violation of § 6–11–115, W.S.1977, Cumm.Supp., 1981. According to the requirements of this statute the State was obliged to prove that appellant had been convicted of one or more of the following crimes: murder, voluntary manslaughter, assault to commit mur-

witness was the same officer at whom the appellant had fired a shot in 1973. When the prosecutor asked the witness a question concerning the nature of the previous offense, but before the question was answered, defense counsel offered to stipulate to appellant's prior conviction. This stipulation—which was accepted by the prosecutor and approved by the court—agreed that appellant's prior conviction was for a crime which is included within the statute, and that he was the one who committed it. Even so, the trial judge permitted the prosecutor to continue to extract detailed testimony from the witness having to do with the prior offense, including the fact that it involved a shotgun being fired at him. Defense counsel persistently objected to the relevance of the testimony in light of the stipulation that had been entered into and approved by the court. The trial judge admitted the testimony on three grounds: (1) for purposes of identification; (2) for the purpose of proving the element of the crime charged; and (3) for the reason that the testimony was relevant to the probable testimony of the arresting officer.

Notwithstanding the stipulation and the grounds upon which the trial judge admitted the evidence, the majority opinion upholds the admission of the officer's testimony on a theory that no one else had ever thought of, i.e., that it was relevant to a question concerning the reasonableness of the officer's arrest and seizure of the weapon. While this justification was urged by the State in its brief before this court, my review of the record does not disclose that the reasonableness of the search and seizure was an issue at trial. The record reflects that the only time a search and seizure question came up was in a pretrial motion to suppress filed by appellant's counsel. This motion was denied by the judge for lack of jurisdiction. The issue was not raised again at trial, and the instructions do not even intimate that the question was submitted to the jury. This explains why the State did not point to a reference in the

transcript when the basis for upholding the admission of the testimony was asserted. It is therefore my conclusion that the majority opinion countenances the admission of the testimony through an imagined justification—one that is not reflected in the record.

In my judgment, the prosecution, upon agreeing to the proposed stipulation, was bound by its terms and it was thereafter improper to offer proof concerning appellant's prior conviction. See: *In re Griffin*, 114 Cal.Rptr. 74, 39 Cal.App.3d 279, Ct.App. (1974). If the prosecution wanted to show that the defendant had previously fired a shotgun at Officer Terwilleger, the stipulation should not have been entered into. The case law is clear that the State is not required to enter into a stipulation offered to prove an element of the charged offense, and it is entitled to present the facts proving that element. See: *People v. Szeto*, 171 Cal.Rptr. 652, 29 Cal.3d 20, 623 P.2d 213 (1981); *State v. Duran*, Utah, 522 P.2d 1374 (1974); *People v. McClellan*, 80 Cal.Rptr. 31, 457 P.2d 871 (1969). Here the prosecutor chose to accept the stipulation. At that point there was no necessity or any further relevance for the officer's testimony concerning the prior conviction for aggravated assault. The State had stipulated to an element of the charged offense, and the trial court erred when it permitted allowing any further testimony. The stipulation did not recite that appellant's prior conviction had resulted because of the firing of a shotgun at a police officer and the fact that the aggravated assault was committed upon a police officer was irrelevant. The statute, § 6–11–115, supra, does not delineate between aggravated assault committed upon ordinary citizens and that committed upon police officers. Since the stipulation covered the necessary facts to prove an element of the crime, the need for further proof ended.

Even though I am of the opinion that error was committed in admitting Officer

---

der, aggravated assault, robbery, burglary or sexual assault in the first or second degree, or mayhem. In this case the proof focused on

appellant's previous conviction for aggravated assault.

Terwilleger's testimony into evidence, I cannot conclude that the error prejudiced the defendant in this case. The burden is on the appellant to show that the complained-of error prejudiced him to such a degree that reversal is required. *Belondon v. City of Casper*, Wyo., 456 P.2d 238, cert. den., 398 U.S. 927, 90 S.Ct. 1815, 26 L.Ed.2d 89 (1969); *Drummer v. State*, Wyo., 366 P.2d 20 (1961). Here the jury was presented with substantial evidence proving the elements of the charged offense, which, not including the erroneous testimony, was sufficient to convict appellant. There was no question about the fact that appellant was in possession of a firearm. Under the circumstances, I cannot conclude that there was a reasonable possibility, in the absence of the error, that the verdict in the case would have been any different. *Nimmo v. State*, Wyo., 603 P.2d 386 (1979); *Reeder v. State*, Wyo., 515 P.2d 969 (1973). I therefore concur in the result reached by the majority.