THE STATE OF WYOMING,
*Plaintiff and Respondent*

**vs.**

ERNEST LYNN LINDSAY
*Defendant and Appellant.*

(No. 2763; November 5th, 1957; 317 Pac. (2d) 506.)

For the defendant and appellant, the cause was submitted upon the brief and also oral argument of J. B. Sullivan of Douglas, Wyoming.

For the plaintiff and respondent the cause was submitted upon the brief of George F. Guy, Attorney General, and Arthur F. Fisher, Assistant Attorney General, both of Cheyenne, Wyoming, and oral argument by Mr. Fisher and William P. Dixon of Douglas, Wyoming, County and Prosecuting Attorney of Converse County.

Heard before Blume, C. J. and Harnsberger and Parker, JJ.

414

## OPINION

Mr. Justice Parker delivered the opinion of the court.

Ernest Lynn Lindsay, convicted by a Converse County jury of murder in the first degree without qualification and sentenced to suffer death in accordance with the provision of § 9-201, W.C.S. 1945, has now appealed to this court, urging errors in the trial of his case.

Defendant has stated to this court in his brief on appeal the facts of his case as follows:

"In the early morning hours of June 20, 1955, the Defendant, Ernest Lynn Lindsay, a young man 22 years of age at that time, in company with one Kenneth Norman Phillips, left Valentine, Nebraska, driving a Buick automobile and proceeded along the highways first driving into South Dakota, then back into Nebraska, and finally into Wyoming. In driving along the highway that morning the two men bought gas at a filling station about daybreak, at which time both Defendant and Phillips were armed. After purchasing the gaso-

line, they proceeded along the highway and at one point, shortly after, noticed a car parked just off the highway and slowed up for purpose of possibly getting some gas; but upon seeing a man sleeping in a small tent near the car, they continued along the highway. A short time later the two arrived at a spot not far from Shawnee, Wyoming, in Converse County, and there saw a blue Studebaker pickup truck parked off the highway. On the back of the truck there was built a box-like structure which had a door in the rear, hinged at the top, and partly open.

"The Defendant and Phillips stopped on the highway, near where the Studebaker truck was parked and discussed taking some gas or pilfering the truck. There was no indication nor sign of anyone being in or around the truck. There were no windows on the side of the truck facing the highway, nor was there a chimney or any other thing to indicate that possibly somebody might be in the rear of the truck. Phillips got out of the car, walking toward the highway, for the purpose of determining whether or not anyone was around, and with the thought that if anyone should come along he could warn the Defendant.

"The Defendant walked over to the truck, tried the door of the cab of the truck, which was locked, walked around to the rear, at which time he stooped under the door which was ajar on the end of vehicle to come up under to look into the truck. At the time of stooping to get under the protruding edge of the door in the rear of the truck, the Defendant had in the waist of his pants a gun. The gun started to slip out of the waistband of his trousers; the Defendant put the gun in his hand and went up under the door of the truck. When he glanced up he was surprised to find himself confronted by a large man who was sitting near the rear of the truck who turned, swung his arm, and hollered, and the Defendant shot him. The Defendant testifies, 'I don't know if he was fixing to hit me with something or shoot me or whether he was as scared as I was. I don't know, and I shot him'. The Defendant was frightened and startled and did not know at the time how many shots he had fired. After the

shooting, the Defendant ran back to the car, 'was white, shaking, and nervous and could not talk'.

"The Defendant and Phillips, after some conversation, then determined to take the truck, hide the body, and cover up the crime.

"They transferred some clothes from the car which they had been driving to the truck, secured the rear door on the truck, left the car which they had driven to the scene of the shooting, and proceeded through Douglas, Wyoming, to Casper, Wyoming, at which point the Defendant purchased a shovel. They continued then to a point some sixteen miles beyond Casper, and off the highway buried the body of Herbert A. Diestler, the deceased.

"After burying the body, the Defendant in looking through the truck found certain traveler's checks and two one dollar bills. The two young men left the scene of the burial, proceeded back to Casper, through Douglas to Cheyenne, Wyoming, and into Colorado, Kansas, and eventually arrived in the State of Tennessee, near the city of Chattanooga, at which point the superstructure on the truck was demolished and discarded, the gun was thrown into a lake, and the Defendant and his companion then went into the State of Oklahoma to a point near the town of Warner, Oklahoma, where they removed the license plates from the truck, attempted to burn the truck, and abandoned it.

"Defendant and Phillips were apprehended in Jeffersonville, Indiana, on July 8, 1955, by the Jeffersonville Police, at which time the automobile they were driving carried plates of the Studebaker truck."

This statement, although not in entire agreement with the State's version and not reflecting completely all details disclosed by the record, nevertheless suffices as a basis for the discussion of the points raised in the appeal.

We shall discuss in chronological order defendant's specifications of error.

# I

He first complains that the court erred in refusing to give Instruction D-3, which reads as follows:

"You are instructed that uncontroverted evidence should ordinarily be taken as true, and uncontroverted evidence which is not improbable or unreasonable cannot be disregarded, even if it comes from an interested witness, and unless shown to be untrustworthy, is conclusive."

It is urged that this instruction is justified in Eagan v. State, 58 Wyo. 167, 128 P.2d 215, 226. We cannot agree. The required instruction while containing some of the wording used in the Eagan case would tend to preclude the jury from evaluating the testimony of the witnesses. The portion of the Eagan case quoted by defendant states:

"* * * Where an accused is the sole witness of a transaction charged as a crime, as in the case at bar, his testimony cannot be arbitrarily rejected, and if his credibility has not been impeached, and his testimony is not improbable, and is not inconsistent with the facts and circumstances shown, but is reasonably consistent therewith, then his testimony should be accepted. * * *"

A careful reading of this decision with emphasis on the statement quoted by defendant discloses a modification of the general rule that the jury are the sole judges of the credibility of witnesses. Nevertheless, such statement is much more comprehensive than the instruction offered by defendant; and no reason has been suggested why the rule stated in the Eagan case should be altered.

## II

Defendant urges that the court erred in refusing to give Instruction D-1 which after purporting to define grand larceny and robbery stated further:

"If you determine from the evidence that the taking of the pickup truck and other valuables by Ernest Lindsay was a grand larceny, then you may not find the defendant guilty of murder in the first degree in the attempt to perpetrate or in the perpetration of a robbery."

A review of the record shows that among the instructions given by the court, with no objection being registered by defendant, were No. 8, defining burglary; No. 10, listing the material acts necessary to find that burglary had been committed; No. 12, defining robbery; and No. 14, delineating the material facts required to be proved to constitute robbery. These instructions would seem to have adequately informed the jury as to the elements of robbery and to have made unnecessary any explanation of what was *not* robbery. No cases are cited in support of defendant's theory, and we think it is without merit. Additionally, the requested Instruction D-1 by its phraseology and definition of larceny and robbery would seem to exclude from the statutory crime of murder in the first degree a killing during burglary or an attempt thereof. This would tend to exonerate defendant if the jury believed there had been no larceny or robbery, even though they did believe that the killing had occurred during burglary or an attempt thereof (or even had been premeditated)—a determination within the province of the jury to make under the evidence.

## III

Complaint is made of the court's refusing to give Instruction D-2 which reads:

"You are instructed that in this case the accused and Kenneth Phillips, his accomplice, are the sole witnesses to the crime charged. If, from the evidence, you find that their testimony is not improbable, and is not inconsistent with the facts and circumstances shown, but is reasonably consistent therewith, and their credibility has not been impeached, then their testimony should be accepted."

This proffered instruction does fulfill the requirements set out in the above-quoted portion of the Eagan case but is, nevertheless, improper for two reasons. First, its wording is conflicting and confusing in that it simultaneously refers to *two* witnesses and designates them as the *sole* witnesses. Webster defines sole as "without another or others; single; one and only." Second, the record clearly shows that defendant was the only person present as an eyewitness at the time of the shooting. In fact, defendant's counsel in his brief states, "Defendant, Lindsay, is the sole witness of the transaction charged as a crime." Thus, the tendered instruction stating that Phillips was a witness of the crime was factually incorrect. Moreover, examination of the record discloses that Instruction 23 given by the court without objection from the defendant read:

"You are instructed that in this case the accused, Ernest Lindsay, is the sole witness to the killing of the deceased. If from the evidence you find that his testimoney is not improbable and is not inconsistent with the facts and circumstances shown, but is reasonably consistent therewith, and his credibility has not been impeached, then his testimony should be accepted."

This states more clearly than Instruction D-2 the gist of the requirements set out in the Eagan case and repeated in State v. Helton, 73 Wyo. 92, 276 P.2d 434, 443, upon which defendant relies.

## IV

Defendant insists that the court erred in accepting State's Exhibits 52-56, pictures of the grave of deceased and of the body after exhumation, objecting in that they were "grisly reproductions of the decomposed body of the deceased * * * have no bearing on the facts in the case * * * [and were] highly inflammatory and prejudicial to the Defendant." However, no authorities were cited to substantiate defendant's viewpoint. The conduct and general demeanor of the accused after the crime are always relevant whether part of the res gestae or not. See 22 C.J.S., Criminal Law § 623, citing 16 C.J. 549, note 82. Likewise, proof of the corpus delicti in a homicide case, that is, the fact of death by the criminal agency of another, may be made by any legal evidence; and the best proof thereof is the finding and inspection of the dead body. See 40 C.J.S., Homicide § 201. Nor were the exhibits excludable because they were gruesome. The matter of their necessity as proof and of their being introduced for the purpose of inflaming the jury's emotions are questions within the discretion of the trial court—which we do not think was abused in this instance. See generally 23 C.J.S., Criminal Law § 852, p. 54. This is in accord with State v. Callaway, 72 Wyo. 509, 267 P.2d 970, and is fully supported by 2 Wharton's Criminal Evidence, 11th ed., p. 1275.

"* * * where it [demonstrative evidence] is competent, tends to throw light on, and has a direct bearing upon, a material issue, it is admissible and is not to be excluded because of its other effects on the jury. * * *" For a general discussion of the admissibility as evidence of the body of deceased or portions thereof, see *id.* at 1294.

## V

Defendant alleges as error the court's permitting the witness, Phillips, to testify over objection that he and defendant stole the car which they were using. Although no authorities are presented to support the criticism, we shall examine this point. The State meets the objection by quoting previous testimony of Phillips admitting the car to have been stolen, to which testimony defendant had not interposed a timely objection. The record discloses that, after some conversation between Mr. Dixon, the prosecuting attorney, and the court regarding the propriety of the question, Mr. Dixon said, "I will withdraw that question." His statement may have been ambiguous, but it would seem to be sufficient to preclude any later reliance on the fact that the subject had been previously opened. However, we do not agree with defendant that the question was improper. As is indicated by defense counsel, the general rule is that evidence of accused having committed another crime independent of and unconnected with the one on trial is inadmissible. See 22 C.J.S., Criminal Law § 682. But evidence is not to be excluded because it shows or tends to show the commission of other offenses where it tends to prove facts material in the trial for homicide or where it shows or tends to show a plan, scheme, system, or course of conduct. See 22 C.J.S., Crminal Law § 688, and § 691 at 1140 ff. This exception to the general rule as it relates to forgery is recognized by Judge Blume in State v. Grider, 74 Wyo. 88, 284 P.2d 400, 406, 288 P.2d 766. One of the better known cases which presents the philosophy of the law on this point is People v. Molineux, 168 N.Y. 264, 61 N.E. 286, 62 L.R.A. 193. The theft of the automobile by the defendant and Phillips tended to show a course of conduct on the part of the defendant which we think was relevant to the crime with which he was charged and was, therefore, admissible.

## VI & VII

Defendant in his sixth specification of error contends that there was not sufficient competent evidence to support or warrant the verdict and in his seventh specification assails the judgment and sentence as being contrary to law. Essentially both specifications deal with one subject, i.e., whether or not there was sufficient evidence under the law to warrant the conviction for first degree murder. To determine this, we first re-examine the statute, § 9-201, W.C.S.1945, and find that there are three sets of circumstances under which a person may properly be convicted of the crime of murder in the first degree: First, if he commits the act purposely and with premeditated malice; second, if he commits the act in the perpetration of certain specified other crimes; and third, if he commits the act in the *attempt* to perpetrate these specified crimes. The statute reads:

"Whoever purposely and with premeditated malice or in the perpetration of, or to attempt to perpetrate any rape, arson, robbery, or burglary, or by administering poison or causing the same to be done, kills any human being, is guilty of murder in the first degree and shall suffer death, but the jury may qualify their verdict by adding thereto, 'without capital punishment' and whenever the jury shall return a verdict qualified as aforesaid, the person convicted shall be sentenced to imprisonment, at hard labor, for life."

It is urged by the State that the killing was done in the perpetration of a burglary (including an attempt), evidenced by the following acts: (a) the trying of the left hand door of the truck and finding it locked, (b) the touching of the door of the truck's superstructure with his back, and (c) the opening of the rear door of the truck immediately prior to the killing. In opposi-

tion defendant's counsel calls attention to the evidence and insists that there was no testimony showing such breaking and entering as to constitute burglary—including in his discussion the question of attempt. A determination of the validity of the State's position on its arguments will simultaneously present our views on defendant's position.

The State's argument regarding burglary and attempted burglary are so closely related that it may be well to here note the Wyoming burglary statute, § 9-309, W.C.S.1945, in its provisions with relation to the attempt:

"Whoever, at any time, breaks and enters, or *attempts to break and enter,* into any dwelling house, automobile or other motor vehicle * * * with intent to steal property of any value, is guilty of burglary * * *." (Emphasis supplied.)

It thus appears that an attempt to commit a burglary in this State is in fact a burglary, which is, of course, a departure from the common law rule, and may account for the citation in argument of much law which is fully applicable to burglary but is not germane to a discussion of an "attempt to commit a burglary." Turning then to the *attempt,* defendant in his brief quoted 12 C.J.S., Burglary § 28:

"To constitute an attempt there must be not only the requisite intent, but also an overt act. The act must be one indicating a burglarious intent and must be something more than mere preparation. * * *"

Under such definition and within the meaning of § 9-309, we think that there was clearly a burglary by defendant immediately preceding the killing of deceased. The evidence is undisputed that defendant and

Phillips stopped in the vicinity of deceased's truck with the admitted intention of pilfering the truck and that defendant in carrying out that intention went over to the vehicle, tried the door and found it to be locked, and then went to the rear of the truck. Thus, the elements of defendant's own definition are fulfilled. It is true that there is a paucity of cases on this specific subject, but this does not alter the irrefutable principle. The case of Jones v. State, 172 Miss. 597, 161 So. 143, is cited by defendant for the principle that the mere rattling of the window does not show a burglarious intent, as such act is just as consistent with an intent to attract the attention of an occupant of the house as it is with an intent to break and enter for the purpose of committing a crime. On reading the case, we find that questions were raised regarding the defendant's purpose in going to the house; and the court there pointed out the possibility that defendant might have intended some legitimate purpose rather than burglary. In the instant case there was no question why defendant was there. It is undisputed that he intended to steal from the truck, and his actions unmistakably indicated his effort to enter it. A case closely in point is that of Barrick v. State, 233 Ind. 333, 119 N.E.2d 550. The defendant there was charged with automobile banditry,[1] having left a parked car some distance from the building and having shaken and tried two locked doors of a building as though attempting to get in. The court there discussing various ac-

---

[1]The Indiana statute provided. "If any person or persons shall commit or attempt to commit a felony, having at the time on or near the premises where such felony is attempted or committed, an automobile * * * by the use of which he or they escape, attempt to escape or intend to escape * * * he, they and each of them shall be guilty of automobile banditry * * *." Burns' 1942 Repl. § 10-4710.

tivities of the defendant indicating intent held at page 554 of 119 N.E.2d that the "unsuccessful attempt of the appellant * * * to open the door was an attempted breaking." The parallel between the Barrick case and the one at bar is so close on the point of burglary as to be most persuasive, especially since Wyoming criminal law has been rooted in that of Indiana.

Defendant admitted that he touched the rear door of the truck with his back but was not sure whether he had moved it. The State now argues that the jury would have been justified in finding this touching to have constituted a burglary, but the cases cited on this point do not appear to be especially convincing. The State admits that there must be an "act of physical force," and we are doubtful if such touching as defendant admits could be so classified.

Turning then to the contention of the State that defendant actually opened the rear door and entered the truck immediately prior to the killing, much emphasis was placed upon the "manifest impossibility for a man the size of the defendant to stoop under the [rear] door and come upright, without moving the door." In other words, the State contends that the jury had a right to believe the physical facts and disbelieve the defendant. The testimony was uncontroverted that the rear door of the truck was hinged at the top, and that the bottom of the door was about twenty-eight inches from the ground. Defendant said it was propped open a foot to two feet. As the State insists, it would have been a difficult matter for a man to have stooped under the door and raised up to a position in which defendant claimed to be at the time the shooting occurred. But on the other hand, defendant insists that it was possible and true that he bent down, raised up under the door, and used no force whatever to effect an entrance to

the truck. We think that this matter was properly a question for the jury. The evidence regarding the physical facts as well as that concerning defendant's activities at the rear of the truck were properly admitted as evidence for the consideration of the jury. In fact, it is not contended to the contrary. An interpretation of this evidence and an allocation of the weight to be given to both the circumstantial and the direct evidence was within the province of the jury.

"* * * the weight to be attached to specific parts of the evidence introduced, as well as the credence to be given to the testimony of the witnesses, is wholly within the province of the jury. * * *" 26 Am.Jur., Homicide § 500.

"* * * after it is determined by the court that evidence is admissible and is sufficient to go to the jury, the questions of its weight and of its sufficiency to establish the facts or issues are for the jury * * *." 23 C.J.S., Criminal Law § 1138.

See to the same general effect 20 Am.Jur., Evidence §§ 1216 and 1217; and 53 Am.Jur., Trial § 282.

The record discloses substantial evidence showing beyond a reasonable doubt that the defendant while engaged in a burglary killed the deceased; and the verdict of the jury should, therefore, not be disturbed.

The defendant in urging the insufficiency of the evidence to support a verdict of first degree murder argues that there was no showing of premeditation or of participation in a robbery—either actual or attempted. Part of his argument stems from the testimony of defendant and Phillips. In the light of the entire record showing other direct and much circumstantial evidence, all of which the jury was entitled to consider and to evaluate, we are unimpressed with defendant's

views. However, the complete justification for the verdict of first degree murder by reason of defendant having been engaged in burglary at the time of the killing makes a discussion of premeditation and participation in robbery unnecessary.

We find no reversible error in the trial of the defendant; and the judgment of the district court is, therefore, affirmed.

And now this court appoints the fourth day of January 1958 for the execution of the sentence pronounced in the court below.

Affirmed.