John C. NUNEZ, Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

No. 3142.

Supreme Court of Wyoming.

July 3, 1963.

Brooke Wunnicke, Cheyenne, Thomas M. McKinney, Basin, for appellant.

John F. Raper, Atty. Gen., and W. M. Haight, former Deputy Atty. Gen., Dean W. Borthwick, present Deputy Atty. Gen., and Harold Joffe, County and Pros. Atty. of Washakie County, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY and McINTYRE, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

Appellant, John C. Nunez, was convicted in the District Court of Washakie County of second degree murder and sentenced to a penitentiary term of not less than 20 nor more than 25 years. He appeals to this court, claiming (1) the state failed to prove a punishable crime, and (2) the evidence in any event was insufficient to sustain a verdict of second degree murder.

It is not disputed in the case that defendant-Nunez and Kenneth McCullum were in a bar at Worland, Wyoming, on November 5, 1961; that they had some argument; and that the argument led to a fist fight behind the bar, during which McCullum received blows from Nunez, which resulted in McCullum's death.

### Evidence of Homicide

■ Defendant's claim of failure on the part of the state to prove a punishable crime is predicated on the proposition that the evidence shows defendant acted in necessary self-defense. The evidence is in conflict as to which of the two men was the aggressor. We think it was sufficient to have entitled the jury to believe beyond a reasonable doubt that the aggressor was Nunez, and that he provoked the conflict. This alone would make it doubtful whether the right of self-defense could be invoked. See State v. Bristol, 53 Wyo. 304, 84 P.2d 757, 761; and State v. Flory, 40 Wyo. 184, 276 P. 458, 462.

■ However, there is a more compelling reason for holding the jury was warranted in finding Nunez guilty of unlawful homicide. It has been said several times in this jurisdiction that to justify a homicide on the ground of self-defense, it must appear the defendant was in great peril of death or serious bodily harm, or had reasonable ground for believing and did believe he was in such peril, and the killing was necessary to avert such peril, and no other reasonable means of avoiding it was open to him. Espy v. State, 54 Wyo. 291, 92 P.2d 549, 554; Durham v. State, 29 Wyo. 85, 210 P. 934, 938.

To justify killing in self-defense, defendant must not only have believed he was in danger, but the circumstances must have been such as to afford reasonable grounds for the belief. State v. Sorrentino, 31 Wyo. 129, 224 P. 420, 423, 34 A.L.R. 1477, rehearing denied 31 Wyo. 499, 228 P. 283, 34 A.L.R. 1487; Loy v. State, 26 Wyo. 381, 185 P. 796, 799.

We have carefully read all of Nunez's testimony, and we find that at no time did he claim he was in danger of death or serious bodily harm, or that he believed he was in such danger. Even if the jury believed his testimony as to how the fight started, which it was not obliged to do, and even if it accepted his version of the actual affray itself, there would be no basis for believing defendant was ever in danger of serious harm or that he ever believed himself to be in such danger. Certainly he was not in such danger when he inflicted the fatal injuries upon McCullum.

True it is defendant testified that he had started up steps when he was pulled down by McCullum; that McCullum kicked him and said he was going to kill him. However, Nunez got up and his own description of the fight would indicate he had the better of it from that point on. He tells of being mad and of hitting McCullum hard and knocking him back six or eight feet, of hitting him another time and knocking him down on his face or to his knees, after which he asked McCullum "have you got enough?" and said "let's quit." Then he said he helped him up. He testified McCullum hit him again in the stomach and he hit him back.

According to Nunez, the men fought back and forth for what seemed like a long time. He tells of hitting McCullum at least one time in the mouth or somewhere in the face and another time in the eye. Another blow struck by Nunez knocked McCullum to his knees again, and Nunez claims to have left him in that position.

As to whether Nunez had any fear or reason for fear of serious harm, he was asked whether McCullum hit him in the face, and he replied, "No, sir, I won't [sic] let him." Of the two men, Nunez was at least as large or larger than his opponent. Nunez was 6 feet 2 inches tall, McCullum 5 feet 6 inches or 5 feet 7 inches. They may have weighed approximately the same. Nunez claimed he was 149 pounds when last weighed and McCullum was described as being 145 to 150 pounds heavy. Nunez himself described McCullum as being a "little guy."

One of the witnesses testified that prior to the fight between Nunez and McCullum, Nunez stood up in the bar and said he could take on any three in the house one at a time. Although Nunez denied such a statement, the jury was nevertheless entitled to believe it. If the jury did believe such testimony, it might easily conclude that Nunez was fully capable of taking care of himself during the fight; that he was not in great peril of death or serious bodily harm; and that he had no reason to believe he was.

More telling perhaps, on the question as to whether Nunez had been a person standing in fear of his life or serious injury, was the testimony of doctors and others who described the injuries inflicted upon McCullum. Blood was described as being all over the ground where he lay and up on the wall a distance of 5 feet 8 inches. His face and right eye were said to have been badly damaged. He was taken to the hospital and a doctor was called, but he was dead when the doctor arrived. Nunez had no serious injuries.

An autopsy was performed and the doctors testified there were severe trauma and contusions about McCullum's head, particularly around the right eye. They indicated there was evidence of severe blows or beating in that area. There was an abrasion at the base of the brain, and the cause of death was a severe hemorrhage at the base of the brain.

Apparently the trial court adequately instructed the jury on the law of self-defense, and no complaint is made with respect to the instructions. Therefore, the issue of self-defense having been fully and properly presented to the jury, we cannot say as matter of law the jury was wrong in resolving that issue against the defendant.

### Degree of Homicide

The offense of second degree murder is defined in § 6–55, W.S.1957, as follows:

"Whoever purposely and maliciously, but without premeditation, kills any human being, is guilty of murder in the second degree, and shall be imprisoned in the penitentiary for any term not less than twenty years, or during life."

In order to sustain a conviction of second degree murder, it was incumbent on the state not only to prove beyond a reasonable doubt that Nunez killed McCullum, but also that he killed him both "purposely" and "maliciously."

By definition the word "purposely" means intentionally or deliberately. We need then to see whether the evidence is sufficient to show beyond reasonable doubt that Nunez intended to kill McCullum, and if so, whether he did it maliciously.

In State v. Parmely, 65 Wyo. 215, 199 P. 2d 112, 118, where the accused was charged with assault and battery with intent to kill and murder, this court approved an earlier decision holding that the specific intent to kill must be proved as any other fact in a case. Doubt was expressed in the Parmely case as to whether it was shown beyond a reasonable doubt that he intended to commit a felony. Likewise we find doubt in the instant case as to whether it was shown beyond a reasonable doubt that Nunez in-

tended to kill McCullum, or that he killed him on purpose.

There was no direct evidence that Nunez threatened to kill McCullum or that he purposely did so, and no circumstances were shown from which the jury could infer beyond a reasonable doubt that defendant intended to kill his opponent. As stated in State v. Helton, 73 Wyo. 92, 276 P.2d 434, 442, it is incumbent upon the state to prove circumstances from which legal malice might be justly inferred. Of course it is equally incumbent upon the state to prove circumstances from which intention might be justly inferred.

Nunez is the only living witness to the actual fight. As we have already indicated, he related how he asked McCullum at one time if he had enough and said let us quit. He also helped him up. After the fight was over, Nunez testified he told the bartender and another man to, "Go make sure that man is all right." He claims he also told his wife the same, and she corroborated the part concerning her. None of this testimony was contradicted. If true, it would refute the idea that Nunez deliberately or intentionally tried to kill his opponent.

■ Where an accused is the sole witness of a transaction charged as a crime, as in the case at bar, his testimony cannot be arbitrarily rejected, and if his credibility has not been impeached, and his testimony is not improbable, and is not inconsistent with the facts and circumstances shown, but is reasonably consistent therewith, then his testimony should be accepted. Eagan v. State, 58 Wyo. 167, 128 P.2d 215, 226.

■ Inferences contrary to direct testimony are not ordinarily sufficient to support a finding.[1] Hence, in the absence of concrete evidence on the part of the state to show intent, and in the absence of anything to contradict or impeach the testimony of defendant and his wife, there can be no presumption of law on intent. State v.

Parmely, supra. The state therefore failed to prove that the killing of McCullum was purposely done by Nunez.

In the same manner in which it was incumbent on the state, for a conviction of second degree murder, to prove the accused "purposely" killed, it was also incumbent on the state to prove he "maliciously" killed. In Eagan v. State, supra, the court first considered the matter of malice, and then at 128 P.2d 225, it said the intent to kill was closely connected with the matter of malice and the same rule would probably apply, in that particular case.

■ We think the same is true in the case now before us. As stated in State v. Sorrentino, 31 Wyo. 129, 224 P. 420, 423, 34 A.L.R. 1477, rehearing denied 31 Wyo. 499, 228 P. 283, 34 A.L.R. 1487, what constitutes malice is not easily defined. The term, as used in the law of homicide, has often been defined as the *intentional* killing of a human being by another, without legal justification or excuse and under circumstances which are insufficient to reduce the crime to manslaughter. 26 Am.Jur., Homicide, § 40, pp. 183–184. See also State v. Ogilvie, 180 Or. 365, 175 P.2d 454, 459; and State v. Myers, 248 Iowa 44, 79 N.W.2d 382, 390.

■ There is such a wide variation in the definitions ascribed to the term "malice," and we have said enough about the term "purposely," so that we deem it unnecessary to be precise in determining whether the state has sufficiently met its burden of proving a malicious killing. Instead, we rely on what has been said in this jurisdiction before, that if the crime is as consistent with guilt of a lesser crime as it is with the guilt of a higher crime, the conviction should be of the lesser crime. State v. Bruner, 78 Wyo. 111, 319 P.2d 863, 871; Eagan v. State, supra.

■ We, accordingly, hold the conviction should be reduced to manslaughter in

1. See National Labor Relations Board v. Kaye, 7 Cir., 272 F.2d 112, 114; and Waller v. Northern Pacific Terminal Co. of Oregon, 178 Or. 274, 166 P.2d 488,

496–497, certiorari denied 329 U.S. 742, 67 S.Ct. 45, 91 L.Ed. 640, rehearing denied 329 U.S. 825, 67 S.Ct. 181, 91 L.Ed. 701.

keeping with the pattern set in State v. Bruner, 78 Wyo. 111, 319 P.2d 863; State v. Sorrentino, 31 Wyo. 129, 224 P. 420, 34 A.L.R. 1477, rehearing denied 31 Wyo. 499, 228 P. 283, 34 A.L.R. 1487; State v. Flory, 40 Wyo. 184, 276 P. 458; Eagan v. State, 58 Wyo. 167, 128 P.2d 215; State v. Helton, 73 Wyo. 92, 276 P.2d 434.

The verdict of the jury is therefore set aside as to murder in the second degree and sustained as to manslaughter; also the judgment and sentence of the district court are set aside, and that court is directed to resentence the defendant for manslaughter.