**Robert ADEN, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 84–219.**

Supreme Court of Wyoming.

April 10, 1986.

* Retired November 1, 1985.

Wyoming Public Defender Program: Leonard D. Munker, State Public Defender, Martin J. McClain, Appellate Counsel, Cheyenne, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Crim. Div., John Renneisen, S. Asst. Atty. Gen., and Roger Fransen, Asst. Atty. Gen., Cheyenne, for appellee.

Before THOMAS, C.J., and ROSE,* ROONEY,** BROWN and CARDINE, JJ.

THOMAS, Chief Justice.

The major question to be resolved in this appeal is whether the testimony of an arson investigator who was presented as an expert witness must, as a matter of law, be held to be incompetent evidence. If that

** Retired November 30, 1985.

testimony is not competent, a corollary question then is raised as to the sufficiency of other evidence to sustain a conviction. We conclude that the expert testimony was competent evidence and that there is ample evidence to sustain the jury's finding of guilty. The judgment and sentence based upon that finding is affirmed.

Robert Aden was convicted of a violation of § 6–7–101, W.S.1977.[1] The fire which the information charged Aden had started occurred in a mobile home which he occupied. During the course of the trial to a jury the testimony of an independent insurance investigator was offered as that of an expert witness, and the court permitted the witness to testify as an expert. The jury convicted Aden of the charge of arson in the first degree, and he was sentenced to not less than five nor more than seven years in the Wyoming State Penitentiary. It is from that judgment and sentence that Aden appeals.

Aden articulates the issue in his brief as follows:

"Whether the competent evidence presented to the jury was insufficient to sustain the conviction of willfully and maliciously setting fire to a dwelling house."

The State of Wyoming states the issues in this way:

"Can appellant properly assert error based upon the admission at trial of expert testimony to which no objection was made at trial?

"Was the testimony of James Ashby, an expert witness, incompetent and not properly admissible at trial?"

■ In support of his argument Aden relies upon the case of *Belle Fourche Pipeline Co. v. Elmore Livestock Co.*, Wyo.,

669 P.2d 505 (1983). In that case this court held that there had been a failure of proof of the loss in value of real property when an expert witness agreed on cross-examination that prior to testifying he had not known of a coal lease of the land, and because of that coal lease he could not find a willing buyer for the land for the highest and best use upon which he had premised his opinion of the value. His negative response left the landowner with no proof of the value prior to condemnation and no proof of any diminution in value. In both that case and this one no objection was made as to the qualifications of the expert witness. Although Aden submits a different contention, there is no significant similarity between his case and *Belle Fourche Pipeline Co. v. Elmore Livestock Co.*, supra.

Aden premises his argument upon the proposition that the arson investigator did not have sufficient information available to him upon which to base his opinion. If the court were to accept Aden's reading of the record we might agree. Our examination of the record persuades us that it is significantly different from what Aden contends it to be. In *Strang Telecasting, Inc. v. Ernst*, Wyo., 610 P.2d 1011, 1015 (1980), this court said "[A]n imprecise factual discussion will not profit the advocate's client in this court. We see no reason to tolerate a practice which can only succeed if this court is misled." Aden also ignores the established concept that whenever the appellant in a criminal case challenges the sufficiency of the evidence, which is one of the points here, the duty of this court is to examine all the evidence in the light most favorable to the state to determine if there is sufficient evidence to uphold the verdict. *Broom v. State*, Wyo., 695 P.2d 640 (1985).

---

1. § 6–7–101, W.S.1977, provides:

"§ 6–7–101. Arson; first degree.

"Any person who willfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels or procures the burning of any dwelling house, whether occupied, unoccupied or vacant, or any kitchen, shop, stable or other outhouse that is parcel thereof, or belonging to or adjoining thereto or any standing timber on public or privately owned

land, whether the property of himself or of another, shall be guilty of arson in the first degree, and upon conviction thereof, be sentenced to the penitentiary for not less than two (2) nor more than twenty (20) years."

First degree arson now is limited to starting a fire or causing an explosion in an occupied structure and is defined in § 6–3–101, W.S.1977 (June 1983 Rev.).

When the evidence is viewed in that way Aden's claim of incompetent testimony from the arson investigator disappears.

The fire occurred on March 20, 1983, just outside the city limits of Casper. The Casper Fire Department was summoned to the fire, and it responded even though the officers of the department realized as they approached the mobile home which was burning that it was outside the city limits. The fire was suppressed within a short period of time. Fire department inspectors and fire investigators from the city of Casper were on the scene. As a matter of routine fire suppression, burning material was taken from the room where the fire originated while the fire was being suppressed.

The following morning the investigation was turned over to the Natrona County Fire Department, and an officer of the Natrona County Fire Department investigated the scene of the fire on March 22. Several days later, on March 26, the independent insurance investigator who testified as an expert at the trial was called upon to investigate the fire. He examined the scene of the fire and the rubbish removed from the fire, and he interviewed Robert Aden. Sometime later on April 18, the Natrona County fire inspector pursued some additional investigation at the scene. He had with him a deputy sheriff and the county electrical inspector. An electrical junction box was secured from the premises on that occasion together with some carpet samples. After this further investigation, the prosecution of Aden was commenced.

The theory of the state of Wyoming in this case was that Robert Aden had intentionally started the fire which partially burned his mobile home. Aden's theory which he presented to the jury was that the fire had started accidentally because of a short in the junction box located in a closet of the mobile home which arced and ignited flammable materials which were near the junction box. Aden called as witnesses a captain in the Casper Fire Department, two expert witnesses, and Aden's bankruptcy attorney and trustee. These witnesses established that when the fire department arrived no flames were burning on the bedroom floor in the mobile home; that no accelerants were detected in carpet samples; that an electrical source for the fire could not be eliminated from the available evidence; and that Aden had no real motive for the fire. Obviously there was a conflict in the evidence, but our rule is that the credibility of witnesses, the weight of the evidence, and conflicts in the evidence must be resolved by the finder of fact, the jury in this instance. We are only justified in setting a verdict aside if there is not sufficient evidence to support it.

Turning then to the attack upon the expert testimony founded upon the *Belle Fourche Pipeline Co. v. Elmore Livestock, Co.*, supra, case, Aden argues that we should go through a sequential process outlined there. He contends that we should conclude that the expert testimony of the insurance investigator was not competent. He then urges the court to conclude that in the absence of the opinion of the expert the evidence is not sufficient to support this verdict. The State of Wyoming suggests that we should disavow the rule set forth in *Belle Fourche Pipeline Co. v. Elmore Livestock Co.*, supra, and re-establish, if it has in some way been lost, the proposition that the weight to be given the testimony of an expert witness is a question for the jury. The State bolsters this argument by the fact that at trial the testimony of the expert witness was not challenged as incompetent.

Aden points out that the expert witness explained what one should do in investigating a fire. A detailed examination of the general area of origin must be pursued; each layer of debris must be checked; the ashes must be sifted through layer by layer; knowledge of the nature of the material burned is essential; and these procedures are essential for an investigator to determine how the fire started. Aden contends that his analysis of the record demonstrates that this information was not obtained by nor was it available to the expert;

and, consequently, he did not have the proper basis for a valid opinion according to his own criteria. Therefore, Aden insists the testimony of the expert was not competent evidence and should be ignored in evaluating the sufficiency of the evidence.

There is no necessity for receding from *Belle Fourche Pipeline Co. v. Elmore Livestock Co.*, supra, in this instance. The expert witness who testified in that case admitted the lack of the appropriate foundation for his expert opinion. That did not occur in this instance. The arson investigator did not interview the firemen who had removed the debris from the mobile home, but he did know what they had seen. A Casper fire department inspector testified with respect to things that had been removed from the closet in the bedroom in which Aden claimed the fire had started. He also said that he knew the height of the things that had been in the closet, which he said was 12 to 16 or 18 inches because the wall was clean below where the fire had burned. The same city fire department inspector explained that while the junction box was a possible source of ignition there was no defect in it which would indicate that it had been the source of the fire. He concluded that it was the only possible source of an accidental fire, but that he could discern that something else had caused a cushion in the bedroom to burn. The damage to the ceiling indicated that the fire had burned the longest and the hottest in the bedroom and not in the closet, but if the junction box had started the fire in the closet he would expect more damage there.

The expert witness also knew that the county fire inspector had been in the house and had examined the room where the fire occurred. The county fire inspector had looked through the things that had been removed from the house and had spoken with Aden about the fire. The information obtained by the county fire inspector was taken into account by the expert.

With respect to Aden's assertion that the expert's knowledge concerning the flamma-bles contained in the room was faulty he relies upon cross-examination with respect to foam cushions on a loveseat. The expert testified, however, that those cushions would not puddle and spread in an ink blot pattern which he had discovered on the carpet. They would spread to a degree but the pattern would be uniform. The irregular pattern could not be caused by clothing and such. The expert agreed that other flammables could cause an ink blot pattern, but the things that he found to have been present would not have done that.

The expert concluded that the evidence at the scene was not consistent with an accidental smoldering fire. The lowest point of burning, which in this case was the floor in the bedroom, is the likely origin. There was no enameling on windows and that is unusual if an accidental fire occurs because accidental fires smolder and the lack of enameling is inconsistent with slow smoldering. The smoke patterns demonstrated that not long after the fire ignited it was permitted to vent towards the back door. The ceiling in the bedroom in which the fire occurred was damaged in the middle of the room and that was the place where the only carpet burning was found. The burned carpet was the lowest point of the fire, and it was some five to ten feet from the junction box in question. There was no burning around the electrical outlet. The carpet was melted in an ink blot pattern, and there was only surface burning on the sheetrock near the junction box and slight surface burns below the junction box. He testified that he could eliminate the junction box inside the closet as the source of the fire because the damage to the hangar rod was not consistent with fire coming directly up from the junction box. It was consistent with heat coming into the closet. In his opinion the damage to the furniture located in the room indicated that the fire started along the entire ink blot pattern almost instantaneously. He concluded that the furniture damage was the result of a hot intense fire and flammable liquid can cause such a fire. He did concede that he did not know whether the circuit breaker which fed the line to the

junction box was faulty, but he explained that once he had located the area of origin of the fire he did not proceed further with an examination of the electrical source.

The arson investigator was qualified as an expert in accordance with Rule 702, W.R.E, which provides:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

He did disclose the underlying facts or data upon which he premised his opinion in accordance with Rule 705, W.R.E., which provides as follows:

"The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination."

The opinion which he furnished on the ultimate issue is permitted pursuant to Rule 704, W.R.E., which provides as follows:

"Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

In sum total this expert witness testified as to an opinion which he felt qualified to give because of the information which was available to him. He did not concede that he was unable to state an opinion because of a defect or deficiency in information about which he had not been aware. This distinguishes the case from *Belle Fourche Pipeline Co. v. Elmore Livestock Co.*, supra. We hold that the opinion of this expert was competent testimony to be introduced at the trial.

■ It may be that Aden would concede the sufficiency of evidence issue in view of our decision that the fire-arson investiga-tor's expert testimony was admissible. Other evidence, however, established that Aden had claimed the smoke was too heavy for him to leave the master bedroom through the door so he went out the window of the master bedroom and on to his brother's residence to call the fire department. The insurance adjustor testified that Aden told him a different story about the window. The evidence established that Aden was home alone the night of the fire. The Casper fire department captain said that Aden was fully clothed when the first squad arrived at the fire, and he only observed smoke from a crack in a window in the bedroom where the fire occurred, but if there had been another open window there would have been smoke coming out of the window. A Casper fire department engineer testified that the back door of the mobile home had been propped open with a cash register, and another Casper fire department firefighter testified that there was no smoke coming from open windows. The county fire investigator and a firefighter testified that it was difficult to close the master bedroom window from the outside, and the county fire investigator said that physical evidence indicated the master bedroom windows had been closed during the fire. The county electrical inspector also testified that damage to the junction box was consistent with the fire outside the box and others said that the heat source came from outside the box.

Under these circumstances we have no difficulty in concluding that there was ample evidence from which the jury could conclude that Aden had started the fire. Certainly there was no error in refusing to grant a motion for judgment of acquittal on the ground that a reasonable juror must have had a reasonable doubt as to the existence of any of the essential elements of the crime. *Chavez v. State*, Wyo., 601 P.2d 166 (1979).

The judgment and sentence is affirmed.