Bruce DeWayne DANGEL,
Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 85–275.

Supreme Court of Wyoming.

Sept. 11, 1986.

Leonard D. Munker, State Public Defender, Martin J. McClain, Deputy State Public Defender, and Julie D. Naylor, Appellate Counsel, Public Defender Program, Cheyenne, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., and Terry L. Armitage, Legal Intern, Cheyenne, for appellee.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

THOMAS, Chief Justice.

The question raised in this case is whether the evidence was sufficient to sustain the conviction of Bruce DeWayne Dangel for three counts of vehicular homicide in violation of § 6–2–106(a), W.S.1977.[1] In addition Dangel relies upon the case of *Eagan v. State*, 58 Wyo. 167, 128 P.2d 215 (1942), and asserts that the acceptance of his testimony would require an acquittal as a matter of law. We are satisfied that the evidence is sufficient to sustain the convictions, and that the Eagan rule is not applicable in this instance. We affirm the judgment and sentence entered by the trial court.

Dangel was charged with three counts of vehicular homicide in violation of § 6–2–106(a), W.S.1977. The three victims were killed in a single accident. The jury, after trial, returned a verdict of guilty as to each of the three counts. Dangel then was sentenced to one year in the county jail, with the proviso that seven months of that sentence be suspended and that he be afforded the possibility of work release after having served 90 days. In addition he was fined $15.00. This appeal is taken from that judgment and sentence.

The fatal accident occurred at the intersection of Gooseberry Road, Wyoming Highway 431, and U.S. Highway 20, near Worland in Washakie County. Dangel was approaching the intersection from the west, and a tractor trailer unit was approaching the intersection from the south. Dangel failed to stop for the stop sign which controlled the intersection, and apparently he failed to observe an approaching southbound pickup truck. He avoided a collision with the semi truck, but collided with the pickup and killed the three victims.

The State of Wyoming proceeded under alternative theories of criminal negligence. The State contended that Dangel either failed to brake and stop his vehicle or that if his brakes failed to work he knew they were not working properly. Dangel's theory of defense was that the brakes failed suddenly and that the deaths of the victims were due to an accident which occurred without criminal negligence. In presenting this appeal Dangel raises only the question of "Whether the evidence presented to the jury was insufficient to sustain the conviction of three counts of unlawfully and with criminal negligence causing the death of another person."

In examining the sufficiency of the evidence we must consider the evidence with respect to each of the alternative theories presented by the State:

"* * * If one of the alternative theories submitted to the jury is unsupported by substantial evidence, the general verdict must be set aside * * *." *Fife v. State*, Wyo., 676 P.2d 565, 568 (1984).

---

1. Section 6–2–106(a), W.S.1977 provides as follows:

"(a) Except as provided in subsection (b) of this section, a person who unlawfully and with criminal negligence causes the death of another person while operating a vehicle is guilty of homicide by vehicle and, upon conviction thereof, shall be fined not more than two thousand dollars ($2,000.00) or imprisoned in the county jail for not more than one (1) year, or both. Evidence of a violation of any state law or ordinance applying to the operation or use of a vehicle or to the regulation of traffic, except for evidence of a violation of W.S. 31–5–233, is admissible in any prosecution under this subsection."

Dangel focuses his challenge upon the sufficiency of the evidence to support a finding that he did not attempt to stop at the intersection, and we shall first consider that evidence.

There is no question that Dangel was familiar with the intersection of Gooseberry Road with U.S. Highway 20. He had driven it "hundreds of times." On the previous day he drove the same route in another truck. Dangel explained at trial, relying upon his position that his brakes had failed, that he observed the northbound truck trailer unit, but that he did not see the southbound pickup until it was too late. He was attempting to beat the truck trailer unit through the intersection when he collided with the pickup truck. The highway patrolman who investigated the accident, however, testified about swish and skid marks appearing in the sand in the vicinity of the intersection. He testified that these marks indicated that the brakes had been retarding, that is, the truck was slowing. He testified that he found no evidence that the brakes were engaged more than 66 feet from the stop sign. Dangel swerved into the left lane between that point and the intersection. The swish marks found by the highway patrolman indicated that Dangel had attempted to turn to the south which, if successful, would have been a maneuver that would have avoided the collision with the semi truck.

With respect to the State's theory that Dangel knew the brakes were not operating properly and that he continued to drive a defective vehicle, the evidence discloses that Dangel was assigned by his employer, Triple A Trucking of Worland, to pick up a load of waste water from the Ralston Processing Plant about 100 miles to the north. Dangel performed a routine inspection of his truck prior to leaving the shop, and that included road testing the air brakes. According to Dangel's testimony he noticed on his way to the Ralston Processing Plant that the brakes "seemed a little soft, but I was able to stop the truck, no problem." He testified that the brakes were softer than they had been at the shop, but that he had no concern about them. He stopped for lunch at Meeteetse on the return trip, and he was able to stop so he wasn't concerned about the brakes at that point. He testified that they then were about the same, "a little soft." Dangel then testified that as he approached the intersection of Gooseberry Road with U.S. Highway 20 he suffered a brake failure and he then attempted to outrun the northbound truck trailer. He said that he did not see the southbound pickup until it was too late to apply the maxi brakes successfully. He also denied in his testimony that he had been riding the brakes on the trip.

Other testimony disclosed that a new brake system had been installed on the truck Dangel was driving about three months prior to the accident. A mechanic who worked for Triple A Trucking testified that the braking efficiency was 100 per cent. Expert witnesses for the State explained the operation of the air brake system on the truck and testified that the system and the warning buzzer were operational. One of these witnesses agreed that the air system was at 100 per cent, and that the foundation brakes were in typical shape, that is 65 to 75 per cent effective. That witness stated that overheated brakes were the only thing which would have prevented the truck from stopping. Employees of Triple A Trucking who testified provided conflicting evidence with respect to the condition of the brakes on the truck. The expert witness for Dangel testified that the braking efficiency at the time of the accident was less than 50 per cent, and he testified with respect to defects that he found in the system.

The instruction given to the jury explained by way of definition that:

> " '[C]riminal negligence' is much more than ordinary negligence and must be of a great or excessive deviation from that standard of care which a reasonable, prudent person would exercise under the same or similar circumstances to avoid a substantial and unjustifiable risk of harm."

It is this element of the offense that Dangel contends the evidence is not sufficient to support, conceding that substantial evidence would support all other elements of the offense.

The standard of review with respect to the sufficiency of evidence when that challenge is raised in a criminal case is:

"[T]his court is to examine all the evidence in the light most favorable to the state to determine if there is sufficient evidence to uphold the verdict. *Broom v. State*, Wyo., 695 P.2d 640 (1985)." *Aden v. State*, Wyo., 717 P.2d 326 (1986) at 327.

This standard has been adopted because of its consistency with the standard required in federal post-conviction review of state proceedings as set forth in *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 61 L.Ed.2d 560, reh. denied 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979).

■ When the evidence is examined in the light most favorable to the state it is apparent that the jury reasonably could have concluded that Dangel knew that the brakes on the truck were not operating effectively and could further have found that his failure to check the system, adjust his driving or simply park the truck was criminally negligent conduct. On the other hand the jury reasonably could have disbelieved Dangel and his expert witness with respect to the brake failure and could have found that the brakes were functioning properly but that Dangel failed to apply the brakes in order to stop at the intersection. Applying the proper standard there is sufficient evidence under either theory to support the verdicts of guilty returned by the jury. The jury clearly could have found criminal negligence because of Dangel's failure to stop at the intersection or, if it concluded that there had been a brake failure, it could have found knowledge that the brakes were not functioning properly and criminal negligence in continuing to operate the truck with defective brakes.

Dangel also contends that even though there might be sufficient evidence to support the jury's verdicts he still is entitled to

a reversal based upon the language of the court in *Eagan v. State*, 58 Wyo. 167, 198, 128 P.2d 215, 225–226 (1942), in which the court said:

"[W]hile the jury are ordinarily the sole judges of the credibility of witnesses, the rule has its limitations, and many cases have announced modifications thereof, the composite of which seems to be substantially as follows:

Where an accused is the sole witness of a transaction charged as a crime, as in the case at bar, his testimony cannot be arbitrarily rejected, and if his credibility has not been impeached, and his testimony is not improbable, and is not inconsistent with the facts and circumstances shown, but is reasonably consistent therewith, then his testimony should be accepted."

■ The court over the years has dealt with reliance by defendants upon the proposition articulated in *Eagan v. State*, supra, almost on an *ad hoc* basis. We have set forth the requirement that the defendant must be the sole witness to the events in issue in order to rely upon the Eagan rule. *Cutbirth v. State*, Wyo., 663 P.2d 888, 890 (1983); *Searles v. State*, Wyo., 589 P.2d 386, 390 (1979); *Cullin v. State*, Wyo., 565 P.2d 445, 448, at 453 (1977). In this instance Dangel was not the sole witness of the event charged as a crime, nor was he the only one who could testify about the condition of the brakes at the time of this incident. His own expert testified with respect to the condition of the brakes at the time of the accident. The fact that Dangel cannot satisfy this condition to invoking *Eagan v. State*, supra, would be sufficient to dispose of his contention.

We also have held, however, that the rule of Eagan v. State, supra, does not pertain in an instance in which the credibility of the accused is questionable or his testimony is inconsistent or improbable. *Cutbirth v. State*, supra; *Gore v. State*, Wyo., 627 P.2d 1384, 1387 (1981); *Cullin v. State*, supra, 565 P.2d at 453; *Dickey v. State*, Wyo., 444 P.2d 373, 374 (1968); and *State v. Goettina*, 61 Wyo. 420, 158 P.2d 865, 879 (1945). At the trial Dangel's testimony that the

brakes failed was impeached by expert testimony concerning the brakes and their capacity to function and by investigative reports admitted into evidence. His own testimony is inconsistent. He claimed both to have attempted to stop and to have intended to outrun the northbound truck trailer. He also would have turned onto Highway 20, but his positioning of his truck in the left lane made that maneuver impossible. Although Dangel's version of the circumstances surrounding the collision was not improbable it was controverted or impeached directly and by fair inference from the evidence. For this additional reason he could not invoke the Eagan rule. *Leitel v. State*, Wyo., 579 P.2d 421 (1978).

While Dangel's reliance upon the language of *Eagan v. State*, supra, could be decided for these reasons it perhaps is appropriate to afford some further analysis to the viability of the proposition articulated in *Eagan v. State*, supra. In *Cutbirth v. State*, supra, the court pointed out that the rule does have its limitations. While not all of the cases which discuss this language have mentioned an instruction (*Eagan v. State*, supra; *Cutbirth v. State*, supra; *Gore v. State*, supra; *Doe v. State*, Wyo., 569 P.2d 1276 (1977); *Buckles v. State*, Wyo., 500 P.2d 518, cert. denied 409 U.S. 1026, 93 S.Ct. 475, 34 L.Ed.2d 320 (1972); *Dickey v. State*, supra; *Nunez v. State*, Wyo., 383 P.2d 726 (1963); and *Helton v. State*, 73 Wyo. 92, 276 P.2d 434 (1954)), a number of cases in which the rule of *Eagan* has been discussed did involve jury instructions. *Searles v. State*, supra; *Leeper v. State*, Wyo., 589 P.2d 379 (1979); *Leitel v. State*, supra; *Cullin v. State*, supra; *Raigosa v. State*, Wyo., 562 P.2d 1009 (1977); *State v. Alexander*, 78 Wyo. 324, 324 P.2d 831 (1958); *State v. Lindsay*, 77 Wyo. 410, 317 P.2d 506 (1957); and *State v. Goettina*, supra. In *State v. Lindsay*, supra, the court indicated that a proper instruction must be in the words of *Eagan v. State*, supra, and the court has further stated that such an instruction should be given only where the conditions of the language of *Eagan v. State*, supra, are met. *Searles v. State*, supra; *Cullin*

*v. State*, supra; *Raigosa v. State*, supra; and *State v. Alexander*, supra. In *Leeper v. State*, supra, the court refused to address an Eagan claim of error because the defendant failed to object to the trial court's refusal to give the instruction and plain error was not asserted.

█ An analysis of the language of *Eagan v. State*, supra, leads to the conclusion that its sole utility is to assist the jury or the finder of fact in evaluating the evidence. It would follow that the correct application of this concept requires that the defendant who wants to rely upon this language request that an instruction incorporating the language be given. In the future this court will follow the holding in *Leeper v. State*, supra, and will not consider a claim of error based upon *Eagan v. State*, supra, unless a request for an instruction is made in the trial court. As we have stated above, in this instance, even if Dangel had made such request the trial court would have been justified in refusing to give the instruction; Dangel was not the sole witness and his testimony was not unimpeached and uncontradicted.

Even in light of the rule of *Eagan v. State*, supra, the inquiry upon review remains as to whether there is sufficient evidence from which the jury could conclude that the defendant is guilty. *Leitel v. State*, supra; *Doe v. State*, supra; and *Cullin v. State*, supra. There was sufficient evidence in this case to sustain the conclusion of the jury, represented by its verdicts of guilty, that Dangel was guilty of criminal negligence under either of the alternative theories presented by the State.

The judgment and sentence is affirmed.

URBIGKIT, J., filed a specially concurring opinion in which MACY, J., joins.

URBIGKIT, Justice, specially concurring, with whom MACY, Justice, joins.

I concur with the majority in affirming appellant's conviction. However, while I agree that the so-called Eagan rule articulated in *Eagan v. State*, 58 Wyo. 167, 128

P.2d 215 (1942), has no application to this appeal, I disagree with the portion of the opinion which would determine that the rule in future cases will be considered a rule of construction rather than a rule of law as a matter of basic proof by now directing that all future appeals premised upon the principle can only be based upon rejection of an offered instruction at trial.

Specifically, I believe the court states a new application in countervention of prior precedents when it concludes:

"*An analysis of the language of Eagan v. State, supra, leads to the conclusion that [the Eagan rule's] sole utility is to assist the jury or the finder of fact in evaluating the evidence.* It would follow that the correct application of this concept requires that the defendant who wants to rely upon this language request that an instruction incorporating the language be given. In the future this court will follow the holding in *Leeper v. State,* [Wyo., 589 P.2d 379 (1979)] and will not consider a claim of error based upon *Eagan v. State,* supra, unless a request for an instruction is made in the trial court." (Emphasis added.)

It is obvious that the author of *Eagan v. State,* Justice Blume, considered the rule to be a rule of law and not a rule of construction. 128 P.2d at 225–226. Importantly, after articulating the Eagan rule, Justice Blume states:

"We turn then to consider the facts and circumstances immediately connected with the homicide, *in the light of these rules of law.*" (Emphasis added.) 128 P.2d at 227.

It is this fundamental aspect of the rule that the court now reverses sub silentio.

This court formulated the Eagan rule when it set aside a murder conviction and ordered the trial court to resentence Eagan for manslaughter. The facts were these: Eagan and his wife were alone at home. He was sitting in a chair examining a revolver. She was sitting quite close to him, on an ottoman. The gun discharged, killing her. The State charged Eagan with murder, and sought to prove malice by calling numerous witnesses who testified Eagan sometimes berated his wife, talked about divorce, and shook her. The jury returned a guilty verdict. This court set aside the conviction on the grounds that there was no reason as a matter of law for the jury to have disbelieved Eagan when he testified the shooting was an accident. This was so because Eagan was the sole witness of the crime, his credibility had not been impeached, and his testimony was not improbable or inconsistent. Interestingly, *there was no jury instruction at issue in Eagan.*

It is the rare case where the elements requisite for the application of the Eagan rule coalesce. We have examined the rule in the following 17 cases, but have applied it in only two. See *Cheatham v. State,* 719 P.2d 612 (1986); *Cutbirth v. State,* Wyo., 663 P.2d 888 (1983); *Gore v. State,* Wyo., 627 P.2d 1384 (1981); *Searles v. State,* Wyo., 589 P.2d 386 (1979); *Leeper v. State,* supra, 589 P.2d 379; *Leitel v. State,* Wyo., 579 P.2d 421 (1978); *Doe v. State,* Wyo., 569 P.2d 1276 (1977); *Cullin v. State,* Wyo., 565 P.2d 445 (1977); *Smith v. State,* Wyo., 564 P.2d 1194 (1977); *Raigosa v. State,* Wyo., 562 P.2d 1009 (1977); *Buckles v. State,* Wyo., 500 P.2d 518, cert. denied 409 U.S. 1026, 93 S.Ct. 475, 34 L.Ed.2d 320 (1972); *Dickey v. State,* Wyo., 444 P.2d 373 (1968); *Nunez v. State,* Wyo., 383 P.2d 726 (1963); *State v. Alexander,* Wyo., 324 P.2d 831 (1958), cert. denied 363 U.S. 850, 80 S.Ct. 1630, 4 L.Ed.2d 1733 (1960); *State v. Lindsay,* Wyo., 317 P.2d 506 (1957); *State v. Helton,* Wyo., 276 P.2d 434 (1954); and *State v. Goettina,* Wyo., 158 P.2d 865 (1945). We found the rule applicable in *State v. Helton,* supra, and *Nunez v. State,* supra. In both cases, as in Eagan, this court set aside a murder conviction because, as a matter of law, the jury should not have found the defendant guilty of any crime greater than manslaughter.

The majority in this case have now reached the surprisingly new conclusion that Eagan is a rule of construction. In every prior instance where the court has examined the rule it has unequivocally indi-

cated it to be a rule of law—not construction. Today's decision flies in the face of this uniform precedent and is completely at odds with Justice Blume's original articulation.

In defining the Eagan rule in *Doe v. State*, supra, 569 P.2d at 1279, this court reemphasized:

" * * * The Eagan rule is an important one, and a diligent search of the record is required to ascertain whether it should be applied. *Where the rule is applicable, the defendant's version of a homicide must be accepted—even in the face of a jury verdict to the contrary.* In [appeals from murder convictions], *our duty* is neither to substitute our opinion for that of the jury, nor to blindly accept the jury's determination as correct. *We are required,* in order to sustain the conviction, to find that there is sufficient probative evidence, direct or circumstantial, to prove intent and malice beyond a reasonable doubt." (Emphasis added.)

In *Cutbirth v. State*, supra, 663 P.2d at 890, we said:

"We therefore cannot say as a matter of law that appellant's assertion that the shooting was accidental was unimpeached, nor can we say that his various accounts were inconsistent or probable. These determinations are conditions precedent to a reversal under Eagan."

We addressed the Eagan rule in *Leitel v. State*, supra, 579 P.2d at 424–425:

"The Eagan Rule is, of course, helpful to a defendant only in those circumstances where his explanation remains uncontradicted either directly or by fair inferences from the testimony and evidence. * * Under the facts of this case, we cannot employ the Eagan Rule to negate the jury's finding of intent and malice.

*       *       *       *       *       *

"When deciding whether a set of facts call for reversal under the Eagan Rule, we must invoke the concept reannounced in Doe:

" ' * * * we must accept as true the evidence favorable to the prosecution and give the State the benefit of every favorable inference which may be reasonably and fairly drawn.   * * *'

*       *       *       *       *       *

" * * * We cannot, therefore, say, as a matter of law, that appellant's version of the shooting remained unimpeached by other and credible evidence—a condition precedent to a reversal under the Eagan Rule."

And in *State v. Helton*, supra, 276 P.2d at 443 this court stated:

" * * * [A]pplying [Eagan] to the facts of this case, we may fairly say, that the defendant, being the sole living witness to the shooting, her testimony, including that portion describing her condition and the antecedent reasons for it, all tending to show that she was in a highly upset, frightened, and confused emotional and impassioned condition, *should not have been rejected by the jury.* Her credibility had not been successfully impeached, her story was not shown to be improbable nor inconsistent with the facts and circumstances shown, but it was in fact shown to be reasonably consistent with such facts and circumstances and, therefore, *the jury had no right to convict her of a greater crime than that of voluntary manslaughter."* (Emphasis added.)

The above cases plainly illustrate that the application of the Eagan rule to the facts and circumstances surrounding a crime is a matter of law. It is the trial court, and in the appropriate instance the appellate court, which determines whether Eagan applies. This remains true whether or not any jury instruction incorporating Eagan is offered at trial.

The majority opinion in this case states: "In *Leeper v. State*, supra, the court refused to address an Eagan claim of error because the defendant failed to object to the trial court's refusal to give the instruction and plain error was not asserted."

My reading of *Leeper* suggests that the majority is mistaken when they conclude

that this was the ratio decidendi of the case. Accordingly, the court is wrong to adopt this reasoning as part of the holding here in asserting that henceforth this court "will not consider a claim of error based upon *Eagan v. State,* supra, unless a request for an instruction is made in the trial court."

The court's mistake in analysis of *Leeper,* supra, is manifest from the language of that case:

"Appellant claims error in the failure of the court to give a requested instruction based on the rule of the Eagan case * * to the effect that as Judith [the appellant] was the sole witness to the event, her testimony should be accepted if not improbable or not inconsistent with the facts and circumstances shown, but is reasonably consistent therewith, and if her credibility has not been impeached. The court refused.

\*   \*   \*   \*   \*   \*

"Here, we cannot say that the appellant did demonstrate the violation of a clear and unequivocal rule of law. The Eagan rule requires the defendant to be the *sole* witness to the crime. Both Judith and [someone else] witnessed the incident here and survived to testify. Others in the bar testified to preliminary matters, the warning, and the shot. We cannot find that the Eagan rule should have been applied, and we are unwilling to extend Eagan to cover the facts of this case. * * * The Eagan rule is not to be applied unless all of the conditions are fulfilled. * * * Here, Judith was not the sole witness." 589 P.2d at 382.

If an instruction requirement was dispositive in the case, the substantive consideration of Eagan in that case was at best obiter dictum. A careful reading would not attribute that intent to the author, Justice McClintock.

In summary it is suggested that we do violence to both established Wyoming criminal law principles and the philosophy of stare decisis in this dictum announcement challenging the Eagan rule for the result intended. I would strongly deny the propriety of "redefining" in a case where the rule itself does not apply, but even more forcefully submit that the court should retain its conception and construction in *Doe v. State,* supra, 569 P.2d at 1279, and reaffirm that "[t]he Eagan rule is an important one" and not to be similarly discarded by this emasculation.